UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FRANK KELLY and TODD C.          : CASE NO.
RAY, as Trustees of the          :
PLUMBERS AND PIPEFITTERS         :
LOCAL NO. 520 HEALTH AND         :
WELFARE FUND; PLUMBERS AND       : *Electronically Filed*
PIPEFITTERS LOCAL NO. 520        :
PENSION FUND; PLUMBERS AND       :
PIPEFITTERS LOCAL NO. 520        :
ANNUITY FUND,                    :
        Plaintiffs        :
   v.                          :
GAS FIELD SPECIALISTS, INC.,     :
        Defendant         :

## COMPLAINT

1.    This is an action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended, (29 U.S.C. §§1132(a)(3) and 1145), by trustees of employee benefit plans as fiduciaries of such plans to enforce the terms of a collective bargaining agreement and the terms of the employee benefit plans.  The Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. §1001, et seq.), is hereinafter called "ERISA."

2.     The Court has exclusive jurisdiction of this action pursuant to Section 502(a), (e) and (f) of ERISA, without respect to the amount in controversy or the citizenship of the parties.

3.     Plaintiffs Frank Kelly and Todd C. Ray are Trustees of the Plumbers and Pipefitters Local No. 520 Health and Welfare Fund (the "Health and Welfare Fund"), Plumbers and Pipefitters Local No. 520 Pension Fund (the "Pension Fund") and Plumbers and Pipefitters Local No. 520 Annuity Fund (the "Annuity Fund") , employee benefit plans within the meaning of Section 3(2) of ERISA.  (The Health and Welfare Fund, Pension Fund and Annuity Fund are hereinafter collectively referred to as "the Funds.")

4.     Said Funds are each "multi-employer plans" within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37).  Said Funds have been established and are maintained pursuant to a collective bargaining agreement between an employee organization and more than one employer, and pursuant to a collective bargaining agreement (hereinafter "Agreement") between the  United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local Union No. 520 and Mechanical Contractors Association of Central Pennsylvania, whose members employ members of said Union and other signatory employers, and are required to be maintained and administered in accordance with the provisions of the Labor Management Relations

Act of 1947, 29 U.S.C. §141, et. seq.  A true and correct copy of the Agreement is at-

tached hereto as "Exhibit A."

5.     The Funds are administered in Dauphin County, Pennsylvania, and have

their principal place of business at 4785 Linglestown Road, Suite 200, Harrisburg,

Pennsylvania 17112.  Venue is conferred on this Court pursuant to Section 502(e)(2)

of ERISA, 29 U.S.C. §1132(e)(2).

6.     Plaintiffs Frank Kelly and Todd C. Ray (collectively "the Trustees" or

"Plaintiffs"), are Trustees of the Funds, and are fiduciaries within the meaning of Sec-

tion 3(21) of ERISA.

7.     Defendant company, Gas Field Specialists, Inc., is an "Employer" within

the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).  The Defendant does

business with the Funds that is sufficient to create personal jurisdiction over the De-

fendant in this District, and a substantial part of the events or omissions giving rise to

the claims herein occurred from transactions with the Funds' office in this District.

8.     United Association of Journeymen and Apprentices of the Plumbing and

Pipefitting Industry, Local Union No. 520 (the "Union"), is an "employee organiza-

tion" within the meaning of Section 3(4) of ERISA, 29 U.S.C. §1002(4).

9.     At all times relevant to this action, the Defendant adopted and agreed to

be bound by the terms and conditions of the Agreement, as evidenced by its signing a

Recognition/Joinder, a true and correct copy of which is attached hereto as "Exhibit B."

10.     The Agreement incorporates by reference the Funds' Amended and Restated Agreements and Declarations of Trust (hereinafter the "Trust Agreements").

## COUNT I – AUDIT

11.     The allegations contained in Paragraphs 1 through 10 above are incorporated herein by reference as if fully restated.

12.     Each of the Trust Agreements gives the Trustees the authority to audit and examine pertinent employment and payroll records of employers.

13.     The Trust Agreements of the Pension Fund and Annuity Fund provide, in relevant part:

> "Section 7.09  In connection with the proper administration of the Fund, the Trustees may, by their authorized representative, audit and examine, whenever such audit and examination is deemed necessary or advisable by the Trustees, any records of a Covered Employer deemed pertinent and necessary by the Trustees, including but not limited to job, employment, payroll and financial records, to verify each Covered Employer's compliance with the terms of this Agreement and the collective bargaining agreement.  The Trustees shall have the power to require a Covered Employer to furnish to the Trustees a Bond, with a reputable Surety thereon, with the Trustees as Obligees thereunder, in an amount determined by the Trustees, and with notice provisions acceptable to the Trustees."

14.     The Trust Agreement of the Health and Welfare Fund provides, in relevant part:

> "Section 8.09   In connection with the proper administration of the Fund, the Trustees may, by their authorized representative, audit and examine, whenever such audit and examination is deemed necessary or advisable by the Trustees, any records of a Covered Employer deemed pertinent and necessary by the Trustees, including but not limited to job, employment, payroll and financial records, to verify each Covered Employer's compliance with the terms of this Agreement and the collective bargaining agreement.  The Trustees shall have the power to require a Covered Employer to furnish to the Trustees a Bond, with a reputable Surety thereon, with the Trustees as Obligees thereunder, in an amount determined by the Trustees, and with notice provisions acceptable to the Trustees."

15.     The Trustees of the Funds deemed it both necessary and advisable to the proper administration of the Funds to audit and examine certain employment and payroll records of the Defendant.

16.     Despite notification to the Defendant of the Trustees' desire to conduct an audit and examination of the Defendant's pertinent employment and payroll records, the Defendant has failed and refused to make available to the Funds all of the records that the Trustees deemed pertinent and necessary.

17.     The Funds and their fiduciaries are adversely affected or damaged by the lack of a complete and full audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

18.     The Funds and their fiduciaries have no adequate remedy at law for lack of an audit as the calculations of any damages suffered as a result of the breach requires an audit.

WHEREFORE, Plaintiffs ask that the Court:

a.     Enjoin the Defendant and its officers, agents, service employees, attorneys and all others acting in concert or participation with them to permit an audit of all records under active or constructive control of the Defendant that the Trustees deem pertinent and necessary; and in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due;

b.     Order the Defendant to pay for the audit;

c.     Grant such other and further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II – CONTRIBUTIONS DUE UNDER ERISA AFTER AUDIT

19.     The allegations contained in Paragraphs 1 through 17 above are incorporated herein by reference as if fully restated.

20.     On information and belief, the Defendant has failed to make contributions to the Funds in violation of Section 515 of ERISA, 29 U.S.C. §1145, in a period not barred by an applicable statute of limitations or similar bar.

21.    The Funds are adversely affected or damaged by the Defendant's violation of Section 515 of ERISA, 29 U.S.C. §1145.

WHEREFORE, Plaintiffs ask that the Court:

a.    After an audit, enter Judgment against the Defendant in favor of the Funds for the benefit of the Funds for contributions found due and owing by the audit, together with interest and liquidated damages as called for in the Funds' Trust Agreements, the cost of the audit, and reasonable attorneys' fees and costs incurred in this action in connection with any proceedings to enforce or collect any Judgment as provided under the Trust Agreements and Section 514(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

b.    Grant such other and further relief, legal or equitable, as may be just, necessary or appropriate.

> Respectfully submitted,
> CHARLES W. JOHNSTON, P.C.
> 101 Erford Road, Suite 302
> Post Office Box 98
> Camp Hill, Pennsylvania 17001-0098
> Telephone: (717) 975-5500
> Facsimile: (717) 975-5511
>
> /s/ CHARLES W. JOHNSTON
> Pa. I.D. No. 15621
> e-mail: cjohnston@jadlegal.com
> *Attorneys for Plaintiffs*

Dated:      January 2, 2014

**EXHIBIT A**

# CONTRACT AGREEMENT

### Between the

## MECHANICAL CONTRACTORS ASSOCIATION OF CENTRAL PENNSYLVANIA, HARRISBURG, PA

## AND

## PLUMBERS AND PIPEFITTERS LOCAL UNION 520 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, HARRISBURG, PA AFL-CIO



## MAY 1, 2012 TO APRIL 30, 2015



## LOCAL 520 PLUMBERS AND PIPEFITTERS UNION
## JOURNEYMEN WAGE & FRINGE BENEFITS EFFECTIVE MAY 1, 2012

| | Hourly Rate | Health & Welfare | Journey Pension | Appr. Pension | J.A.T.C. | Industry Fund | Annuity | Journey Savings | Appr. Savings | Journey Assess. | Appr. Assess. | Journey Supple. Assess. | PAC | Intrntnl. Train. Fund |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| "A" rate | 32.67 | 8.00 | 8.85 | 4.43 | .69 | .17 | 3.00 | 1.50 | 1.25 | 3% | .10 | .25 | .10 | .10 |
| "B" rate | 27.12 | 8.00 | 8.85 | 4.43 | .69 | .17 | 3.00 | 1.50 | 1.25 | 3% | .10 | .25 | .10 | .10 |
| "C" rate | 22.87 | 8.00 | 8.85 | 4.43 | .69 | .17 | 3.00 | 1.50 | 1.25 | 3% | .10 | .25 | .10 | .10 |

*Journeyman "B" rate shall be 83% of Journeyman "A" hourly rate
Journeyman "C" rate shall be 70% of Journeyman "A" hourly rate

Effective May 1, 2013, the increase shall be $1.30 per hour
*Effective May 1, 2014, the increase shall be $1.35 per hour
*Unless noted above increases shall be allocated by the Local Union

Local 520 has the right to allocate a portion of wages to the Annuity, Savings and JATC; however, allocation to the Health
& Welfare and/or Pension Funds will be made by the respective fund trustees, upon recommendation of the fund's actuary.

Health and Welfare and Annuity contributions are paid on hours paid, not worked.

*Service Journeyman "B" with U.A. STAR certification shall receive Journeyman "A" rate

## TABLE OF CONTENTS

| Article | | Page # |
|---|---|---|
| | Journeyman Wages | Inside Front Cover |
| | Date of Agreement | 1 |
| | Intent and Purpose | 1 |
| | Parties of the Agreement | 1 |
| I | Union Recognition | 2 |
| II | Trade or Work Jurisdiction | 3 |
| III | Union Security and Assessment Check-Off | 4 |
| IV | Hiring, Layoff and Discipline of Employees | 5 |
| | Drug Testing | 7 |
| V | Supervision Wage Rate | 8 |
| VI | Union Representation and Access to Jobs | 9 |
| VII | Hours of Work and Overtime | 11 |
| | Reduction of Work Week | 12 |
| | Reporting Time, Pay & Pay Day | 13 |
| VIII | Subcontracting | 14 |
| IX | Apprentices | 16 |
| | Journeyman/Apprentice Ratios | 17 |
| X | Travel Expense | 18 |
| XI | Temporary Heat | 18 |
| XII | Equal Employment Opportunity Compliance | 19 |
| XIII | General Conditions | 20 |
| XIV | Shift Differential | 23 |
| XV | Wage Scale | 23 |
| XVI | Health and Welfare | 25 |
| XVII | Pensions | 26 |
| | Annuity Fund | 27 |
| XVIII | Apprentice Training Fund | 27 |
| | Industry Fund | 28 |
| XIX | Savings Plan | 29 |
| XX | Employer's Bond, Reporting Requirements, Due Date of Contributions | 29 |
| XXI | Arbitration | 30 |
| XXII | Fringe Benefit Agreements | 32 |
| XXIII | Pipe Fabricated Off the Job | 33 |
| XXIV | Allocation | 33 |
| XXV | Employer Duty to Compete Prevailing Wage Survey | 33 |
| XXVI | Termination of Agreement | 34 |
| | Signatories of Agreement | 34 |
| | Recognition/Joinder | 35 |
| | United Association Standard for Excellence | 36 |
| | Appendix "A" Points of Jurisdiction | 39 |
| | Appendix "B" Separation from Employment Form | 43 |

i

# AGREEMENT

**1.     THIS AGREEMENT** entered into this 1st day of May 2012 by and between the **MECHANICAL CONTRACTORS ASSOCIATION OF CENTRAL PENNSYLVANIA,     HARRISBURG, PENNSYLVANIA,** on behalf of its members who are hereinafter called the **"Employer"** and **LOCAL UNION 520 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE UNITED STATES AND CANADA (AFL-CIO),** hereinafter called the **"Union".**

## WITNESSETH:

**2.     WHEREAS,** the Employer is engaged in the plumbing and pipefitting industry throughout Central Pennsylvania, and is known as a "Mechanical Contractor" in the industry and in the performance of such work requires the services of competent, skilled and qualified journeymen and apprentices; and

**3.     WHEREAS,** the Union is affiliated with the American Federation of Labor-Congress of Industrial Organizations and has in its membership competent, skilled and qualified journeymen and apprentices to perform all work coming within its trade and craft jurisdiction; and

**4.     WHEREAS,** the Employer and the Union desire to mutually establish and stabilize wages, hours and working conditions for journeymen and apprentices employed with said Employer, and further, to encourage closer cooperation and understanding between the Employer and the Union in the plumbing and pipe fitting industry to the end that a satisfactory, continuous and harmonious labor relationship will exist between the parties to this agreement. A Labor/Management Committee will be utilized to promote and enhance the relationship between Local 520 and the Mechanical Contractors of Central Pennsylvania as well as promote the industry.

**5.     NOW, THEREFORE,**
   (a) The undersigned Employer and Union in consideration of the mutual promises and covenants herein contained mutually agree as follows:

## PARTIES OF THE AGREEMENT

   (b) The Mechanical Contractors Association of Central Pennsylvania, representing certain Employers of plumbers and pipe fitters in the building and construction industry in the area of Harrisburg, Pennsylvania, and vicinity, under authority from its members, pursuant to its constitution and bylaws, has negotiated and executed this Agreement for and on behalf of all its Employer members,

each of whom is the "Employer" party of this contract. A list of the names of those Employer members authorizing the Association to negotiate and execute this Agreement and, on whose behalf it is negotiated and executed, is attached hereto and made a part hereof.

(c) It is further understood and agreed that any Employer bound by the terms of this Agreement by virtue of the authority described in Paragraph 5(b) hereof, agrees that if the Employer withdraws his membership from the Association, the Employer shall be bound by all terms and conditions of this Agreement for the balance of the term of this Agreement. The Mechanical Contractors Association agrees to immediately notify the Union when any Employer member withdraws from the Association and to further notify the Union of any new member joining the Association.

(d) An Employer hereafter joining the Mechanical Contractors Association and who is qualified for an agreement with Local Union 520, shall become a party to this Agreement as an "Employer" by signing a copy of such Agreement and forwarding it to the Union. Such Agreement shall not become effective until signed by the Union.

(e) Each present Employer on whose behalf this Agreement has been negotiated and executed, and each future member who becomes a party by signing this Agreement, shall alone be liable and responsible for his own individual acts and conduct. Any alleged breach of this Agreement by an Employer or any dispute between the Union and an Employer respecting compliance with the terms of this Agreement shall not affect the right, liabilities, obligations and duties between the Union and each other Employer party to this Agreement.

**NOTE**

This contract makes use of masculine pronouns and nouns that end in the syllable "man", such as "journeymen" and "serviceman". By writing their contract in this fashion the parties do not intend any preference whatsoever for males over females in any context in which those words are used. Rather, all words used in or which denote the masculine gender shall include the feminine.

**Article I**
**RECOGNITION**

6. (a) After the Union requested recognition, the Employer recognized the Union as the exclusive section 9(a) bargaining representative of its employees and acknowledges that the Union has satisfactorily demonstrated and submitted proof thereof to the Employer that it represents a majority of the Employer's employees in the unit described in 6(b).

2

(b) The Employer recognizes the Union as the sole and exclusive bargaining representative for all employees in a unit consisting of journeymen, apprentices and other employees described in Paragraph 44 of Article XV in the employ of the Employer with respect to wages, hours and other terms and conditions of employment on any and all work described in Article II in this Agreement.

**Article II**
**TRADE OR WORK JURISDICTION**

7. (a) TRADE JURISDICTION. This Agreement covers the rates of pay, rules and working conditions of all journeymen and apprentices engaged in the installation of all plumbing and/or pipe fitting systems, solar systems, solar panels, and component parts thereof, including jobbing, service, repair work, oil burner work, setting of boilers, refrigeration and air conditioning service or installation, fabrication, assembling, erection, installation, dismantling, repairing, reconditioning, adjusting, altering, servicing, handling, cutting and drilling all holes and chasing except where an air or jack hammer or other power actuated hammer (30 pounds and above) is employed, unloading, distributing, reloading, tying-on, and hoisting of all piping materials, appurtenances and equipment, by any method, including all hangers and supports of every description and all other work included in the trade jurisdiction claims of the United Association, such as, and including but not limited to, the laying of sewer pipes, whether sanitary or storm, consisting of mains which are not serviced by manhole access and also the laying of all lateral sewer pipes, sanitary and storm, from the main sewer whether serviced by manhole access or not into the dwelling, project, or other facility, handling and setting of septic tanks (except concrete) and in addition, all other types of work specified on Appendix A attached to this agreement, subject, however, to any change or limitation in the foregoing as may result from the application of Paragraph 10 of this Article.

(b) Geographical and Trade Jurisdiction. Appendix A-Revert to page 39.

8. All questions as to the territorial jurisdiction of a local union or on "Open Territory" shall be decided by the United Association.

9. TERRITORIAL JURISDICTION.

(a) It is understood that as of the effective date of this Agreement, the territorial jurisdiction of Local Union 520 includes the Counties of Adams, Bradford (West of the Susquehanna River), Centre, Clinton, Columbia, Cumberland, Dauphin, Franklin,

3

Fulton, Juniata, Lancaster, Lebanon (West of Route 501), Lycoming, Mifflin, Montour, Northumberland, Perry, Potter, Sullivan, Snyder, Tioga, Union and York counties, in Pennsylvania, which territory has been established by agreement, charter, tradition and precedent.

(b) The provisions of this Agreement apply to any changed or enlarged territorial jurisdiction of Local 520 in the future, so long as whenever such change or enlargement occurs, the parties will meet in a good faith effort to negotiate the impact of such change or enlargement on all work then under contract.

10. NATIONAL JOINT BOARD. In recognition of the above work jurisdictional claims, it is understood that the assignment of work and the settlement of jurisdictional disputes with other Building Trades organizations shall be adjusted in accordance with the procedure established by the National Joint Board or any successor agency of the Building Trades Department.

11. There shall be no work stoppage because of jurisdictional disputes.

Article III
UNION SECURITY and ASSESSMENT CHECK OFF

12. UNION SECURITY.
(a) Pursuant to Federal Labor Law, good standing membership in the Union shall be a condition of employment for all employees within the bargaining unit described in Article I, Paragraph 6(b) of this Agreement after the seventh (7th) day following the bargaining of such employment or the execution or effective date of this provision, whichever is later, and said employees shall continue in such good standing membership during the term of this Agreement.

(b) Either party of this Agreement shall have the right to reopen negotiations pertaining to union security when the Federal Laws applicable thereto have been changed by giving the other party thirty (30) days written notice.

13. CHECKOFF.
Upon regular authorization, the employer shall deduct as working assessments from the pay of each journeyman the sum of three (3) percent of gross hourly wage, and from the pay of each apprentice the sum of ten (10) cents per hour, for each hour paid from such employee's gross wages.

These deductions will be made from the pay of each employee who signs the authorization form authorizing such deduction. The Union

will hold all authorization cards obtained from the employees and shall, quarterly or upon request affirm to any interested employer, the fact that such authorization card is being held by it. In the event of revocation, if any, the Union shall promptly notify the employer, in writing, of the name of the employee and the date of revocation. The Union is responsible for the accuracy of the information.

During the life of this collective bargaining agreement, each employer shall deduct from the wages of each employee those sums of money which any employee has voluntarily authorized be deducted by his payroll for contribution to the Plumbers and Pipefitters Local 520 Political Action Committee. This deduction will be paid by the fifteenth (15th) day of the month for the preceding month to the Plumbers and Pipefitters Local 520 Political Action Committee.

Article IV
HIRING, LAYOFF AND DISCIPLINE OF EMPLOYEES

14. (a) In hiring employees, the Employer shall be the sole judge of the competency of employees required. When the Employer wishes to hire journeymen or apprentices to perform work within the jurisdiction of the Union, the Employer shall give the Union an opportunity to refer qualified applicants for employment.

(b) When the Union cannot supply qualified applicants after seven calendar days' notice, the contractors may engage in "temporary" hiring subject to the right of the union business agent to replace such employees as have been so temporarily hired as soon as replacements are available.

15. The Employer shall have the right to determine the competency and qualifications of his employees and the right to hire and discharge accordingly, subject to the following conditions below. When separation from employment occurs the Employer shall complete the form attached as Appendix B hereto and provide a copy to the employee and the Union.

(a) When an employee is laid off from his job, the Union office must be notified no later than the day of lay-off, provided however, that no employee shall be laid off on Monday unless the Union office shall have been notified thereof not later than 2:00 PM on the preceding Friday.

(b) Whenever possible every fifth (5th) journeyman on a job shall be fifty (50) years old or older, if available.

(c) No employee shall be discharged except for just cause.

(d) No employee shall be discharged, laid off or otherwise disciplined because of his refusal to perform work on any job on which the Employer has failed to comply with Article III hereof, or because such employee shall have reported a violation of this Agreement to the Employer, the Union, or the Mechanical Contractors Association, or because such employee shall have refused to cross a picket line established on the premises of his own Employer or at a site where his Employer is engaged in performing his business or at the premises of other Employers whose employees are engaged in a lawful strike authorized by a union with whom the Employer is obligated by law to recognize or which has a lawful right to picket.

(e) In order to ensure the optimum utilization of skills and a satisfactory and fair apportionment of job opportunities in the several classes of employment covered by this contract, the employment of persons in the class of work provided for in paragraph 44 of Article XV shall be as follows:

The Employer shall have the right to determine the competency and qualification of his employee and the right to hire and discharge accordingly subject to the condition that he shall hire, for any work covered by the wage scale provided for in Article XV, paragraph 44, only such persons who either: (a) have been declared by the Union as qualified for said type of work in accordance with the procedures established for such determinations, or (b) have demonstrated that they have had at least five years' experience in said type of work. Provided that persons who have been regularly employed by the Employer as servicemen or repairmen may be assigned by this Employer to perform the specific services hereinafter described in connection with new construction work provided: 1) the employer shall give prior notice in writing to the Union of such work assignments; and 2) the duties to be performed by such employee shall be limited to starting and/or testing equipment for the purpose of putting it into operation as part of new construction as defined in this Agreement, and 3) such employee shall be compensated for such services at the journeyman's rate applicable to new construction, as provided for herein.

Employees assigned to and/or employed on a specific job shall be discouraged by the Union from voluntarily leaving such job so as to be assigned by the Union to another job except for good cause known.

(f) Both parties to this agreement in the hiring, transfer, promotion or lay-off of journeymen or apprentices shall not discriminate against any employee on account of race, color, religion, creed,

national or ethnic origin, sex, age (between the ages of 40 and 70), and handicap or disability (as defined in the Pennsylvania Human Relations Act).

(g) Pre-hire testing of applicants for employment, for drugs and/or alcohol, will be allowed in those instances when such testing is required by the owner employing the contractor for whom the applicant seeks to work, or by pertinent government regulations or other requirement; provided, however, that any such chemical testing shall be conducted under generally accepted scientific procedures to ensure the validity and accuracy of such tests.

Unscheduled, random testing of employees for drugs and/or alcohol will be allowed in those instances when such testing is required by the owner employing the contractor, or by pertinent government regulation; provided, however, that any such chemical testing shall be conducted under generally accepted scientific procedures to ensure the validity and accuracy of such tests and, provided further that in the case of employer requirement for such testing that all non-bargaining unit employees of the contractor, including managers, are similarly subject to such unscheduled, random testing.

In the case of "positive" results of any test, the affected applicant for employment shall be so advised by the Contractor's medical personnel, on a confidential basis, prior to the reporting of the results to the Contractor, and the applicant shall have the right to discuss and explain the results, including the right to advise the Contractor's medical personnel of any medication prescribed by his/her own physician; which may have affected the results of the test. This information, too, shall remain confidential between the applicant and the medical personnel. The applicant for employment shall also have the right to have his/her sample independently retested by a laboratory of his/her choice and at his/her expense. If the independent retest is "negative", the applicant should be allowed to begin work immediately and to be reimbursed for the cost of the independent test.

No applicant for employment shall be required to sign any waiver limiting liability of the employer, owner/client, testing lab, or any person involved in the chain of custody of the specimen.

All medical personnel, the contractor, supervisors, owner/client, laboratory, testing facility and all other personnel and agents shall adhere to the American Occupational Medical Association's Code of Ethical Conduct for Physicians Providing Occupational Medical Services (adopted by the Board of Directors of AOMA

July 23, 1976) and AOMA Drug Screening in the workplace ethical guidelines (July 26, 1986).

The term "pre-hire" shall refer to those persons who are initially entering into the Local Union's bargaining unit.

IN ADDITION, THE EMPLOYER/CONTRACTOR WILL HAVE THE RIGHT TO TEST ALL EMPLOYEES ON A "FOR CAUSE" BASIS WHERE THERE IS INDICATION OR EVIDENCE OF DRUG USAGE.

It is agreed that no employee shall be under the influence of, in possession of, or use any illegal substance at work. Testing of employees will be allowed for cause, post-accident and return to work from treatment in accordance with the provisions of 14(g). Any and all unscheduled, random testing shall be subject to stringent controls (such as computerized selection of individuals for testing). Testing methods and procedures technology shall use non-invasive procedures; thresholds for positive results shall be at least as stringent as Federal NIDA thresholds; and treatment coverage shall be in full accord with the latest government standards for publicly mandated policies as well as Federal and state individual privacy and disability laws.

(h) Prior to the start of a new job having a contract price of $500,000.00 or more, the Employer shall notify the Business Manager or Business Agent of the starting date of the job, name of job, location and dollar amount of job.

**Article V**
**SUPERVISION WAGE RATE**

16. (a) Except in the case of service work, the first employee designated by the Employer to act as a foreman with responsibility for directing the work of one or more other employees shall receive a foreman's differential as set forth below. Percentages are based upon the total wage and benefit package.

| 2-9 employees | 1 employee as foreman | 6% |
|---|---|---|
| 10-16 employees | 1 employee as general foreman | 8% |
| | 1 employee as foreman | 6% |

8

| 17-23 employees | 1 employee as general foreman | 8% |
|---|---|---|
| | 2 employees as foreman | 6% |
| | (after the 17th employee, the general foreman is no longer responsible for a crew of employees) | |
| 24-30 employees | 1 employee as general foreman | 10% |
| | 3 employees as foreman | 6% |
| 31-60 employees | 1 employee as general foreman | 10% |
| | 1 employee as area foreman | 8% |
| | 3 employees as foreman | 6% |
| | (plus one additional foreman for every ten employees over 30) | |
| Over 60 employees | 1 employee as general foreman over 60 | 12% |
| | 2 employees as area foreman | 8% |
| | 6 employees as foreman | 6% |
| | (plus one additional foreman for every ten employees over 60; this progression shall continue) | |

(b) Any foreman shall perform the following duties: make layouts, check and seek materials including tools and personally direct work to be performed by the journeymen and apprentices.

(c) On all mechanical contracts covered under the jurisdiction of Local 520, the foreman or general foreman shall not work with the tools when there are more than nine (9) employees on the job, including the foreman.

(d) The general foreman, or foreman, shall not be responsible for more than that particular job, unless given permission by the Business Manager or Business Agents.

(e) Journeymen who act as foremen shall receive training in foreman skills. The curriculum shall be developed by the Mechanical Contractors Association and the training will be provided by the Joint Apprenticeship Training and Education Committee.

**Article VI**
**UNION REPRESENTATION AND ACCESS TO JOBS**

17. ACCESS TO JOBS.
Authorized representatives of the Union shall have access to jobs

9

where employees covered by this Agreement are employed, providing they do not unnecessarily interfere with the employees or cause them to neglect their work, and further provided such Union representative complies with customer rules.

18. STEWARDS.

(a) Steward shall be a working journeyman appointed by the Business Agent of the Local Union who shall, in addition to his work as a journeyman, be permitted to perform during working hours such of his union duties, as pertain only to that job and cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees to allow the steward a reasonable amount of time for the performance of such duties.

(b) When overtime work is to be performed requiring three (3) or more employees, one of such shall be the steward.

(c) When forty (40) employees are employed a steward shall receive a foreman's pay but shall not work with the tools.

(d) In all cases, the steward shall be charged with the responsibility to see to the effective and efficient application of the contract provisions.

(e) Steward Protection — A steward shall be a qualified workman performing work of his craft and shall exercise no supervisory functions. There shall be no non-working stewards until forty (40) employees are on the project. However, a steward shall have the right during working time and with no loss in pay to spend a reasonable amount of time adjusting grievances, including time to meet with employees and supervisors, after notifying his immediate supervisor of his intent. The grievance procedure that a steward shall follow will consist of the following steps:

(1) All grievances must be initiated by a non-steward employee. However, in the event the steward has a personal grievance, he may initiate.

(2) The steward shall reduce the grievance to writing and present it to the ranking job supervisor.

(3) If they are unable to resolve the grievance between themselves, the steward will call both his Business Manager and company management for a joint meeting to resolve the dispute. Under no circumstances will there be any slowdowns or work stoppages, and the steward will return to active work while awaiting the start of the meeting.

A steward is to be the last laid off of those engaged in similar work on a particular project.

Article VII
HOURS OF WORK AND OVERTIME

19. (a) HOURS OF WORK.
Eight (8) hours shall constitute a day's work beginning at 8:00AM and ending at 4:30PM, and including ten (10) minutes immediately prior to the end of the employee's work day to pick up tools and general cleaning, unless otherwise provided by mutual agreement. The day shift shall be forty (40) hours beginning Monday at 8:00AM and ending Friday at 4:30PM. In case of a lay-off, the employee laid off shall be permitted to leave the job with pay one (1) hour before the normal quitting time. Any Employer not complying with the preceding sentence of this provision shall be required to pay the employees two (2) hours reporting time for the following working day.

(b) In the event a job is shut down due to weather conditions or other conditions beyond the control of the Employer, then Saturday may be worked as a make-up day. If Saturday is scheduled as a make-up day a minimum of eight (8) hours will be scheduled and worked weather permitting. Straight time is not to exceed eight (8) hours a day or forty (40) hours per week. If the Employee chooses to work Saturday as a make-up day, Saturday shall be at eight (8) hours at straight time wages and fringes. Under no circumstances will the Employee be allowed to make up lost time on Sunday, holidays or in the following workweek. An Employee may not be laid off or discharged or discriminated against for refusal to work on a voluntary Saturday make-up day.

20. OVERTIME.

(a) New construction other than Journeyman "C" or Light Commercial/ Industrial construction: Hours worked in excess of eight (8) in any one day or forty (40) in any one week or outside the regular work day or week shall be paid at one and one-half times the regular rate for the first two (2) hours of overtime on Monday through Friday and up to eight (8) hours on Saturday. Hours in excess of ten (10) on Monday through Friday, in excess of eight (8) on Saturday and all work performed on Sundays and Holidays shall be at two (2) times the regular straight time hourly rate. The holidays are: New Year's Day, Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving Day and Christmas Day.

If a specified holiday falls on a Saturday, the holiday will be observed on the preceding Friday. If the holiday falls on a Sunday, it will be observed on the following Monday.

(b) Journeyman "C" and Light Commercial/Industrial Work: all time worked in excess of eight (8) hours in any one (1) day or forty (40) hours in any one (1) week or outside the regular work day or work week shall be paid at one and one-half times the regular straight time hourly rate. Scheduled (non-emergency) service and maintenance work performed on Sundays and holidays shall be paid at two times the regular straight time hourly rate.

There shall be no pyramiding of premium time for holiday, Saturday, Sunday, or overtime work, i.e., only the highest single overtime factor shall prevail. Any difference between the parties as to whether any such work, as aforesaid, is new construction or emergency, maintenance and repair work shall be resolved by arbitration. The term "new construction" as used in this Agreement shall include any work on a new, added, enlarged or materially converted structure, involving the attachment, connection, interrelationship or integration of new construction, facilities, or systems with existing structures, facilities, or systems without regard to which structure, facility or system may be the dependent one. The term "non-emergency" as used herein shall mean: something other than an unforeseen occurrence.

The term "maintenance" as used herein shall mean: the act of keeping property or integral parts thereof in existence or to provide for its continuance.

The term "repair work" as used herein shall mean: to restore something which has been decayed or damaged to a good or sound condition as distinguished from the replacement of the element involved except where a repair can only be affected by replacement.

21. REDUCTION OF WORK WEEK TO MEET UNEMPLOYMENT. When twenty-five percent (25%) of the members of the Union are unemployed, seven (7) hours shall constitute a day's work on all jobs on which no expense money is payable under this Agreement and the Union shall have the option on all jobs on which expense money is payable under this Agreement, to determine that seven (7) hours shall constitute a day's work in which event it shall waive the requirement that expense money be paid, or to determine that eight (8) hours shall constitute a day's work, in which event expense money shall be paid.

Whenever fifty percent (50%) of the members of the Union are unemployed, six (6) hours shall constitute a day's work, in which no expense money is payable under this Agreement and the Union shall have the option, on all jobs on which expenses money is payable

12

under this Agreement to determine that six (6) hours shall constitute a day's work in which event it shall waive the requirement that expense money shall be paid, or to determine that eight (8) hours shall constitute a day's work in which event expense money shall be paid.

22. REPORTING TIME. Any employee after being hired and reporting for work at the regular time and for whom no work is provided, shall receive pay for one (1) hour and, if he travels more than twenty-five (25) miles between his home and the job site, shall receive pay for an additional hour at the regular rate of wage, unless he has been notified before leaving his home not to report. The phrase "no work is provided" shall include situations where, because of weather conditions, it would be unreasonable to work. Employees who are eligible for reporting time pay as set forth above shall remain for the one or two hours paid at the job site unless sooner excused by supervision. Any employee who reports for work and for whom work is provided shall receive not less than four (4) hours' pay and, if more than four (4) hours are worked in any one (1) day, he shall receive not less than a full day's pay. There shall be no pay for reporting time in the event of strike or picket conditions.

All employees shall be on the job at 8:00 AM, except in the case of shift work. Two (2) hours "starting time pay" shall be granted to any new employee first reporting to a new job if that employee is two (2) hours or more late in reporting for work on that day unless the Business Agent has had more than twenty-four (24) hours prior opportunity to refer such employee to the job (not counting Sundays); where the employee in such circumstances reports for work less than two (2) hours late he shall be granted pay for such late period as is involved. Employees shall be entitled to and shall be given time off for the purpose of donating blood, with pay, for one (1) hour.

If an employee is called in to work on a Saturday, Sunday, or Holiday, he will be paid a minimum of two (2) hours' pay at the time and one-half rate for Saturday, and at the double time rate for Sundays or designated holidays, but beyond that he will only be paid for the actual hours worked at the premium rate.

23. PAY AND PAY DAY. The Employer's payroll stubs shall show the total gross pay as well as deductions required to be made either by law or the terms of this contract and the Union Business Agent, the then acting Fringe Benefits Funds Administrator or a CPA designated by the Trustees of the appropriate Fund involved shall have the right to inspect the Employer's payroll records only at any reasonable time for the single purpose of verifying the number of hours worked by any particular journeyman or apprentice. Pay day shall be once each week. Employ-

13

ees are to be paid before the end of their regular shift, but not later than 3:00 PM Friday, and in cash or by check. In the event an employee is not paid by 3:00 PM Friday, the Employer shall pay the employee an additional two (2) hours straight time wages as a penalty. The Union may, by serving written notice upon an individual Employer, require such Employer to pay employees only by cash on and after the date of such notice. When employees are laid off or discharged, they shall be paid wages in cash or check due to them at the time of layoff or discharge.

In the case of unscheduled overtime, beginning with the start of the eleventh (11th) hour worked by any employee, the employer shall supply the employee with a hot meal and one-half hour paid time to consume the meal or in the event the employer determines in his own discretion not to provide such a meal, the employer shall provide the employee with one hour of premium paid time plus one-half hour premium paid time to consume the meal. This overtime meal break is to repeat every four (4) hours thereafter. This provision shall apply to employees engaged in construction work and not those doing service work.

The employer shall be permitted to offer deposit to employees in lieu of on-site payment provided it is voluntary and agreed to, in writing, by the employee on a form that is provided by the employer and approved, in advance, by the Union. Wages paid by direct deposit must be paid by the regular pay date provided herein.

The Employer may establish a four (4) ten-hour shift exclusive of the thirty-minute unpaid lunch period at the straight time wage rate, Monday through Thursday. In the event a job is shut down due to weather conditions, holiday or other conditions beyond the control of the Employer, then Friday may, at the option of the Employer, or Saturday, at the option of the Employee, be worked as a make-up day. If Friday is scheduled as a make-up day a minimum of ten (10) hours will be scheduled and worked weather permitting. Straight time is not to exceed ten hours a day or forty hours per week. If the Employee chooses to work Saturday as a make-up day on a project where 4-10 hour days are scheduled, Saturday shall be at ten (10) hours at straight time wages and fringes. Under no circumstances will the Employee be allowed to make up lost time on Sunday, holidays, or in the following workweek. An Employee may not be laid off or discharged or discriminated against for refusal to work on a voluntary Saturday make-up day.

## Article VIII
## SUBCONTRACTING

24. (a) The employer agrees not to sublet or contract out any work

14

covered herein unless the contractor is in agreement with Local 520 Plumbers and Pipefitters.

(b) In recognition of the interest of the Union and the Association in protecting work normally performed by members of the bargaining unit, the Association agrees that: No employer in signed contractual relationship with the Union shall operate through any person, corporation or other entity, either directly or indirectly, nor through their families or, otherwise exercise any degree of ownership, management, control, or directly or indirectly share in any profits, not in any other manner, or through any means, be directly or indirectly a party to the operation of any business of the type covered by this Agreement, unless such business be operated in accordance with the terms of this Agreement. No employer in signed contractual relationship with the Union shall lend or give any of their employees or equipment to similar businesses if such action would result in the diminution of bargaining unit work. The term "Employer" as used in this Section shall include, but not limited to, officers, directors and stockholders of those companies, which are parties to this Agreement.

Not withstanding the above, family relationship, standing along shall not be a violation of this clause.

(c) The following factors or any one of more of them shall be evidence of a violation of Section 24(b).
(1) The absence of separate and independent management, administration and facilities for each company.
(2) The interchange of employees between two companies.
(3) The interchange of work or contracting between the companies for jobs or parts of jobs.
(4) The absence of separate control of personnel policies and labor relations for each company.
(5) The absence of an "arms length" basis with respect to dealings and transactions between the two companies.

(d) Ownership by an "Employer" of an interest in another company whole or part does not necessarily constitute a violation of Section 24(b) if none of the factors in Section 24(c) are present.

25. Soliciting work, subcontracting and so-called "piece work" are strictly prohibited by the members of the Union at all times and no member shall work on a lump sum, percentage, weekly, daily, or fixed fee, or per unit basis.

26. No employee shall be required, as a condition of his employment, to permit himself to be borrowed or loaned to work for any other employer except where he shall have first ascertained from the Union that all persons known to the Union to be qualified to perform the work are at

15

such time employed and working. Refusal of an employee to permit himself to be borrowed or loaned under the aforesaid circumstances, other than the exceptions, shall not be grounds for his discharge. No employer shall require any employee to work contrary to the foregoing provisions.

## Article IX
## APPRENTICES

27. It is agreed that the parties hereto shall set up a Joint Contractor-Union Apprentice and Journeyman Training Committee (JATC) consisting of three (3) representatives each to establish, operate and administer a joint apprentice and journeyman training program with monthly meetings, except during May, June and July. Any such training program may combine classroom training with on-the-job training. The JATC in indenturing new apprentices shall only indenture people in accordance with the following conditions:

   (a) Treat all newly indentured apprentices as a first year apprentice regardless of past experience unless the apprentice can show prior years of recognized apprentice training.

   (b) Effective May 1, 1986, indenture only people who will first agree in writing to attend related training classes, to serve for five (5) years as an apprentice and who agree to the loss of two (2) days of on-the-job training employment whenever such apprentice misses without an excuse three (3) hours per month of related night school instruction except for circumstances over which the apprentice has no control.

   (c) No apprentice shall be sent to work outside the geographical jurisdiction of Local 520 in any case where there is an objection to such from another UA Local.

   (d) No apprentice is to be employed at night when night classes of related training are in session except in case of emergency as hereinbefore set forth.

28. (a) The JATC shall, at all times, receive and administer the contributions payable by the Employers for Apprenticeship and Journeyman training as provided for in Section 48(a) and (b) of Article XVIII of this Agreement and shall make Rules and Regulations for the administration of funds realized from and contributions shall have full and autonomous jurisdiction over matters of the Apprentice and Journeyman training by or through such Rules, Regulations and Requirements or Representatives of the parties hereto

16

as may, by agreement or action, be established. This jurisdiction shall be without interference or restraint by the Employer with respect to the manner by which the United Association or the Local Union and the JATC may deal with any apprentice alleged to be violating the JATC Agreement, Rules or Regulations.

   (b) The JATC shall affirmatively seek, by advertising and all other reasonable means of recruiting, to enroll in the JATC program as many members of the minority races and as many women as can be found to be qualified.

29. JOURNEYMAN-APPRENTICE RATIO.
Each Employer member to this Agreement whose bona fide place of business is in the jurisdiction of Local Union #520 and who steadily employs one or more journeymen of the Union shall be permitted to train one (1) apprentice, and after eight (8) journeymen are steadily employed in that shop a second (2nd) apprentice may be employed. Thereafter, an additional apprentice may be hired for every four (4) journeymen steadily employed. The term of apprenticeship or learning shall be not less than five (5) years.

30. All apprentices employed under this Agreement shall first be registered with the JATC and be indentured to such committee at the earliest possible date. No apprentice shall work on a job during the apprentice's first three (3) years at the trade, except under the supervision of a journeyman at all times.

31. Apprentices shall be paid the following percentages of the "Journeyman Wage rate":

Pay Periods:

| | | Start – 11 month | 50% |
|---|---|---|---|
| 1st | June through April | Start – 11 month | 50% |
| 2nd | May through April | 12 – 23 month | 55% |
| 3rd | May through April | 24 – 35 month | 60% |
| 4th | May through April | 36 – 47 month | 65% |
| 5th | May through May | 48 – 60 month | 75% |

If an apprentice works more than one day in construction work without the direct supervision of a journeyman, the apprentice shall be paid the journeyman's wage rate for such work.

If an apprentice works in service work without the direct supervision of a journeyman, the apprentice shall be paid at least a third (3rd) year apprentice rate or his actual rate, whichever is higher.

17

## Article X
## TRAVEL EXPENSE

32.

(a) Travel pay shall be paid as per rate and not to exceed twelve ($12.00) dollars per day, to be governed by the type of job, job location, and manpower requirements. The Union shall notify in writing, in advance of bid submission, of travel pay requirements.

(b) Any employee sent out of town by the employer and required to be away from his home at least one night shall receive travel expenses of $12.00 to the job and $12.00 coming home and also reasonable expenses for lodging and subsistence for which the employee will be required to furnish receipts if the daily expenditure exceeds $50.00.

## Article XI
## TEMPORARY HEAT

33.

(a) When temporary operation of a permanent heating system is required and has been installed by the Mechanical Contractors, the system shall be maintained by journeymen steamfitters as herein provided.

(b) The job classification of "temporary maintenance employee" is hereby established at a wage rate equal to eighty (80) percent of the Class "A" journeyman's base rate plus full fringes. A temporary maintenance employee shall perform all required maintenance work for the proper operation of the system.

(c) The parties hereto agree not to permit the operation of the permanent heating system or extension thereof unless it has been accepted by the owners or maintained with forty (40) hours of maintenance labor, Monday through Friday, while it is in operation. Under these conditions the system may be operated on a continuous basis for twenty-four (24) hours a day, seven (7) days a week with a minimum of one employee per eight (8)-hour shift.

(d) Any eight (8) hour shift continuing after midnight Friday shall be considered part of the normal forty (40) hour week including no premium pay. Once a shift has started it shall continue for at least forty (40) hours, except where the temporary heat journeyman starts or stops the performance of such work at other than the beginning of the employer's normal work week.

(e) Once the heating system is put into operation on a temporary basis at forty (40) hours per week, Monday through Friday, temporary maintenance as used in this Article XI shall remain until the heating system is accepted by the owner or its temporary operation is no longer required.

(f) When a Class "A" or "B" journeyman works more than eight (8) hours in any one day or more than forty (40) hours in any one week to maintain temporarily operated equipment he shall be paid 1 1/2 times his normal rate for such overtime.

(g) The above provisions regarding temporary maintenance shall be in force and effect from November 15 to March 15, inclusive of each year providing temporary operation is required.

(h) The Mechanical Contractor shall have the right to assign maintenance employees as he sees fit during the heating season.

(i) If temporary operation is required prior to November 15 of any year or subsequent to March 15 of any year, the Mechanical Contractor shall have the option of selecting either a temporary maintenance employee on a per diem basis at the full journeyman's wage rate or a temporary maintenance employee at the maintenance rate on a forty (40) hour per week basis only.

(j) If on a per diem basis, it is hereby agreed that no temporary maintenance employee shall be required during daylight hours as long as other journeymen steamfitters are working on the job.

(k) When the heating system is substantially complete, the owner may accept the system and temporary maintenance will terminate. Substantially completed is defined as all of the system's piping, equipment and appurtenances are installed and in operable condition, excepting only the temperature control system.

(l) When temporary cooling is required and installed by the Mechanical Contractor, the above rates and conditions shall prevail, except that the above dates shall not be effective.

## Article XII
## EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE

34. The parties hereby recognize that the employer, the Union, and the employees have a mutual obligation to assure equal employment opportunities regardless of race, religion, national origin, sex, color, creed, ethnic origin, handicap or disability (as defined in the Pennsylvania Human Relations Act and the Americans with Disabilities Act) and age (40 or over). Any employment or membership practice, or requirement in conflict with Title VII of the 1964 Civil Rights Act, or of the Pennsylvania Human Relations Act or of any governmental regulations or affirmative action programs mandated by government agencies will be a violation of this clause. Any provision of this Agreement that is found by a final adjudication of a Court of competent jurisdiction to be in conflict with the above mentioned laws, will be suspended from further enforcement. No party to this Agreement will

have any liability for violating any provision of this Agreement that is found by such final adjudication to be in conflict with the above mentioned laws.

The Union will assist the employer in complying with Presidential Executive Order 11246, as amended, and with the Regulations and directive issued there under by the Office of Federal Contract Compliance Programs (OFCCP). Any provision in this Agreement finally adjudicated to be in conflict with Executive Order 11246 or OFCCP Regulations will be suspended from enforcement as to any federal contract or subcontract awarded to or performed by the employer.

## Article XIII
## GENERAL CONDITIONS

35.

(a) All pipe cutting and threading and bending machines used in the installation of plumbing, gas fitting, steam fitting, and pipe fitting, shall be controlled and operated by journeymen and apprentices only.

(b) All pipe installed in the territorial jurisdiction of Local 520 up to and including six-inch (6") pipe shall be cut, threaded and fabricated (which includes welding) by journeymen on the job site except where such work is done off the job by employees covered by this Agreement. All pipe above six inches (6") may be cut, threaded and fabricated (which includes welding) in a fabrication shop but it must be done with employees working under this Agreement with Local 520. All pipe heretofore described in this paragraph shall bear the Local 520 Union Label. If cutting, threading, and fabrication (which includes welding) is to be done outside the jurisdiction of Local 520, such work must be performed by such employees working under either the National Agreement, or the pipe shall bear the UA Label. If in the absence of proof that the work being performed outside the jurisdiction is being performed by employees under the National Agreement or that the product has the UA Label, such work shall be overseen by journeymen covered by this agreement with Local 520 who shall receive no less than fifty ($50.00) dollars per day plus any expense in excess of fifty ($50.00) dollars for which the employee provides receipts. All piping for comfort heating and comfort air conditioning and all sleeves not stock items must be cut and fabricated on the job site. All brackets, supports, stands, and hangers shall bear the Local 520 union label.

(c) The foregoing Provision does not include nipples, up to six inches long.

(d) The services of at least two employees shall be required for the handling of pipe, 2-1/2 inches or over in inside diameter and

20

15 feet or over in length or any item in excess of 85 pounds in weight.

(e) All welding machines, including automatic and consoles, shall be started, serviced and maintained by journeymen covered by this Agreement.

(f) When a service journeyman is designated by the employer to be on a standby for service calls, such journeyman shall receive compensatory expenses of no less than $15.00 per weeknight from Monday through Thursday; $25.00 per Friday, Saturday, Sunday and holidays.

(g) Drinking water shall be furnished at all times. The employer shall arrange for a place of a size adequate to accommodate the number of employees employed on the job, to be used by the employees for the purpose of changing clothes and eating lunch, which shall be adequately heated October 1 through April 30. The employer shall provide a suitable place or places for sanitation and toilet facilities necessary to take care of the employees. Such sanitation and toilet facilities shall be adequate to permit employees to take care of basic personal hygiene and cleanliness.

36. An employee covered by this Agreement who owns an automobile or truck shall not be allowed to use his automobile or truck for his employer's work, that is, he will not be allowed to carry or haul materials or equipment, or go from job to job in his vehicle during working hours.

37. TOOLS AND EQUIPMENT.
The employer shall furnish the necessary tools and equipment to employees to safely and skillfully perform the work requested by the employer, including work gloves to each employee (replacements will be given upon return of the used pair), welding hoods, goggles, and welding gloves for welders. Welding sleeves and welding aprons shall be provided on the job site as job conditions require. Each journeyman so designated shall be issued a complete set of hand tools, including measuring devices (excluding foot rules) with a suitable box that can be securely locked by key or combination. In the event an employee loses tools or a toolbox or any other tools issued to the employee under circumstances which show unreasonable neglect, he shall be subject to disciplinary action, including a written reprimand. Repeated loss of tools represents an economic burden to the employer, and this fact is recognized by the Union. Accordingly, where an employee repeatedly loses tools, said employee shall be subject to discharge for cause.

38. WELDING TEST.
(a) Whenever a welding test is required by the employer, it is agreed that the employee while taking such test shall be in the employ

21

of the employer and be compensated for not less than one eight (8) hour day, but may be assigned to other work to complete the eight-hour day. During the actual period that the welding test is under way, the employee being tested shall be assisted by and have present during the testing period a journeyman fitter.

(b) MAINTENANCE OF TEST RECORDS.
The Union will maintain test records for special testing and/or procedure certification processes, including weld certifications.

39. OUTSIDE CONTRACTORS.
Plumbing, Heating or Piping Contractors from any territorial jurisdiction other than that which is described in Paragraph 9 of Article II of this Agreement shall give preference for employment for work performed within the territorial jurisdiction of this Agreement to persons residing within said territorial jurisdiction. Such contractor shall promptly notify the Union of such facts and shall disclose the name and identifying information to enable the Union to administer this agreement. The supervision on all such jobs shall be within the jurisdiction of Local 520 and shall be by journeymen covered by this agreement and residing within the Territorial Jurisdiction as referred to above.

Provided, however, that nothing herein shall be construed or applied so as to afford any preference based upon membership or non-membership in the Union, the sole preference contemplated being a preference based upon residence. Provided further, all persons employed pursuant to this providing shall be covered by and subject to the provisions of this Agreement on all work performed within the territorial jurisdiction described in Paragraph 9 of Article II.

40. Journeymen and apprentices shall not be required as a condition of continued employment to connect up to or with any standard and/or catalogue apparatus, materials, equipment or appurtenances in connection with the installation of plumbing, heating, piping, air conditioning, refrigeration and processed piping systems, unless such apparatus, materials, equipment or appurtenances shall be furnished by the Employer doing the installation.

41. Any article herein conflicting with Federal or State Labor Laws shall be interpreted and applied so as to conform with such laws.

42. The employer shall comply with all applicable local, state or federal government rules or laws as to safety and will notify the Union offices as to the identity of all persons who are licensed by the state to use powder or explosion activated tools.

(a) Employees shall be on the job at the starting time and shall remain on the job until quitting time.

(b) Slow-down practices will not be tolerated.

(c) Each employee shall be entitled to a ten minute coffee break on or about mid-morning of each day worked within the confines of the work area or such other area designated by the employer.

(d) Where work is performed in areas where no smoking is allowed, each employee shall be entitled to a ten-minute break on or about mid-afternoon of each day worked.

(e) SAFETY CLAUSE. Where new safety rules or standards are enacted, the Employer shall communicate the changes to its employees through its foreman.

Article XIV
SHIFT DIFFERENTIAL

43. Each day of the week shall be divided into three shifts. When shifts are required the first shift shall work eight (8) hours at the regular hourly rate. The second shift shall work eight (8) hours at the regular hourly rate plus 15%. The third shift shall work seven and one-half (7½) hours and receive regular hourly rate for eight hours plus 20%. Although the Employer shall not be obliged to pay the employee at the overtime or premium rates computed on the regular straight time rates for work performed during such periods as the shift differential as aforesaid applies, the Employer shall pay ONE AND ONE-HALF TIMES the hourly straight time rate plus ONE AND ONE-HALF TIMES the aforesaid shift differential rate for all hours worked on said shift and where the shift rate is applicable as stated above, in excess of eight (8) hours but not more than 10 hours during any one (1) day. If an employee who commences work after 12:30 PM works in excess of 10 hours during any one day, the Employer shall pay him TWO TIMES the hourly straight time rate plus TWO TIMES the aforesaid shift differential rate for all hours worked on said shift in excess of 10 hours. The aforesaid fifteen per cent (15%) shift differential shall not apply to any work performed on Saturdays, Sundays or holidays designated herein as to which only the contract stipulated overtime rates shall apply as set forth in Paragraph 20 above. Hereafter the shift differential provisions of this section shall apply if the shift work is of at least five (5) days' duration on new construction or at least three (3) days' duration on service and maintenance work.

Article XV
WAGE SCALE

44. (a) Journeyman "A". The straight-time hourly rate for Journeymen A, Plumbers and Steamfitters shall be those set forth on the inside

cover of this contract. Whenever an employee is required by his employer to work in the jurisdiction of another Local Union, the employee will be paid the rate called for by this agreement, or the rate called for by the agreement of the other Local whichever rate is higher.

(b) Journeyman "B". The rate specified on the inside cover of this contract shall be the rate payable to those journeymen who are engaged in the new construction or alteration of all projects of the following kind: light industrial projects over 50,000 square feet and under 100,000 square feet in size which do not require more than 10 bargaining unit employees at any one time during construction or alteration and which when put into operation will not contain any process piping, convention centers, hotels and motels less than 100,000 square feet in size, shopping centers with less than two major tenants and/or less than 100,000 square feet in size. In addition the rate shall cover jobbing, service work, oil burner work, air conditioning service work one the original installation has been completed and put in service; in addition, after all original construction has been completed and the building has been completely occupied, if air conditioning is installed, the "B" rate may be paid if this air conditioning does not exceed 25 tons and there are no "A" rate men on the job. In addition, the Joint Labor/Management Committee will consider additional work on a case by case basis, but in no event less than one time a month. Service journeymen will receive "A" rate upon obtaining U.A. Star certification.

(c) Light Commercial/Industrial Journeyman "C" – The "C" rates specified on the inside cover of this contract shall apply to all work connected with new installation, provided there are no "A" rate workers on the same job as to the following types of structures.
(1) Motels not over 2 stories or 100 rooms.
(2) Free standing restaurants without size limit and individual stores not to exceed 25,000 square feet.
(3) Gas stations.
(4) Strip shopping centers (12 store maximum).
(5) Churches and synagogues.
(6) Laundromats.
(7) Private nursing homes not over three stories; privately owned medical clinics, not attached to or affiliated with any hospital.
(8) Banks-free standing not over 50,000 square feet.
(9) One family dwelling.
(10) Office buildings not to exceed 22,000 square feet.
(11) Apartments not to exceed 3 floors or 4 floors if no elevator.
(12) Food markets not attached to or part of shopping center.

(13) Light industrial which shall mean: An industrial facility that will not exceed 50,000 square feet, and will not require more than 6 bargaining unit employees at any one time during construction or alteration and which when put into operation will not contact any process piping.
(14) Warehousing and distribution facilities less than 100,000 square feet in size that contain no process piping.
(15) Tenant finished work in any commercial/retail space.
(16) In addition, the Joint Labor/Management Committee will meet on an as needed basis, but in no event less than one time a month.

45. While it is provided below that this contract shall terminate on April 30, 2015, there shall nevertheless be no work stoppage at the end of the contract term as to service work because of a disagreement between the parties as to the terms of such new contract which is to begin on May 1, 2015, but the parties shall continue working on such service work after April 30, 2015, under the terms hereof for a maximum of a three (3) month period as the parties agree on the terms of a new agreement. If there is a work stoppage for any reason as to work other than that service work, such shall not be a reason or grounds for a work stoppage as to the service work defined in part (a) of Paragraph 44 unless work defined in part (a) of Paragraph 44 is also involved.

Article XVI
HEALTH AND WELFARE

46. In order to fund such Health and Welfare Program as the parties have heretofore established, the Employer shall, during the term of this Agreement, make the following payments to the Plumbers Local 520 Health and Welfare Fund according to the number of payroll hours which the employee is entitled to be paid, for the sole and only purpose of financing a jointly administered health and welfare fund as provided for in a separate Health and Welfare Fund Agreement as follows:

(a) The sum specified on the inside cover for each hour worked by each apprentice and journeyman covered by this agreement for straight time hours worked and for overtime hours worked on "B" rate, "C" rate and service work, or

(b) In case of all other overtime worked, the sum specified on the inside cover for each such overtime hour times the appropriate overtime factor set forth in Article VII, paragraph 20.

The purpose of the above stipulated hourly payments is to provide,

by reference to a supplemental health and welfare fund agreement, enough monies to establish for the employee or their dependents accident, health and/or death benefits, including hospital, surgical, and medical indemnities in such amounts for such periods based on such rules of eligibility as are now or hereafter in effect by virtue of this agreement supplemental or amendatory agreements between the parties and/or as determined by the Health and Welfare Fund trustees. Provided, however, that no employer shall be liable to any employee or his beneficiary or other beneficiary or estate, for accident, health and/or death benefits or for hospital, surgical and medical indemnities where he shall have paid the sums per hour for each hour worked as aforesaid into the Fund established by the aforesaid supplemental agreement. Each Employer who is a party to or is bound by this or supplemental collective bargaining contract shall furnish the Administrator of the Health and Welfare Fund with the information required on the standard form of report by such Administrator.

The Employer shall report Health & Welfare benefits to Administrator by the 15th of the following month.

### Article XVII
### PENSIONS

47.

(a) In order to fund such Pension Plan as the parties have heretofore established, the Employer shall pay the sum set forth on the inside cover for each apprentice or journeyman covered by this agreement.

The aforesaid payments are to be paid into the pension fund or its administrative representative by the terms of the existing pension fund agreement that may be provided for the employees and/or their spouses and/or their dependents. The pension or retirement benefits in such amounts, for such periods, on such conditions are based upon such rules of eligibility, as are now or hereafter in effect by virtue of this agreement, the pension fund agreement, the rules and regulations issued pursuant to such pension fund agreement and any supplements and amendments to the aforesaid agreement.

(b) No employer shall be liable to any employee or his beneficiary, estate or personal representative for pension or retirement benefits where he shall have paid the sums per hour for each hour worked as aforesaid into the Pension Fund described above. Each employer who is a party to or is bound by this Agreement shall furnish the representative of the Pension Fund with the information required on the forms of report used by or on behalf of said Fund.

26

With respect to whatever increase might be made to the Health and Welfare Fund and/or Pension Fund the same amount is to be uniformly paid into such Fund on behalf of journeymen and apprentices.

The Employer shall report pension benefits to the Administrator by the 15th day of the following month.

### ANNUITY FUND

(c) Effective May 1, 1984, and continuing during the life of this collective bargaining agreement, each employer shall pay the sum set forth on the inside front cover of this agreement for each hour worked by each employee to an Annuity Fund to be under the direction and control of the Trustees of the Local 520 Annuity Fund. Benefits to employees from this Annuity Fund shall be available in such amounts, for such periods, and on such conditions and rules of eligibility as hereafter become effective by virtue of this agreement, the Annuity Fund agreements and any supplements or amendments to the aforesaid agreements. The aforesaid payments are to be paid into the Annuity Fund or unto its administrative representative by the terms of the aforesaid Fund Agreements or any supplements or amendments thereto.

### Article XVIII
### APPRENTICE TRAINING FUND

48.

(a) In order to fund such Apprentice Training Program as the parties have agreed to maintain, the Employer shall pay to the Apprentice Training Fund or its administrative representative designated to receive the same by the terms of the existing Apprentice Training Fund agreement, the sum per hour set forth on the inside cover of this contract according to the number of hours the employees actually worked for the sole and only purpose of paying into a jointly administered apprentice training fund as provided in a separate apprentice training fund agreement.

The Employer shall account for and pay the aforesaid sum to the said fund or its administrative representative designated to receive the same as called for in a supplemental apprentice training fund agreement which provides for an apprenticeship training program based upon such curricula, training, direction, construction and rules of eligibility as are now or hereafter in effect by virtue of a prevailing apprentice training fund agreement and any supplement and amendment to said agreement hereafter developed or rules or regulations promulgated by the Joint Apprentice Training Fund Committee.

27

(b) No employer shall be liable to any employee or any beneficiary of the Apprentice Training Fund where he shall have paid the sums per hour for each hour worked as aforesaid into the Apprentice Training Fund described above. Each Employer who is a party to or is bound by this Agreement shall furnish the representative of the Apprentice Training Fund with the information required on the forms of report used by or on behalf of said Fund.

The Employer shall report Apprentice training benefit to the Administrator by the 15th day of the following month.

**Industry Fund**

The Employer agrees to pay to the Industry Fund the sum set forth on the inside cover for each hour's wages paid to journeymen and apprentices in accordance with this Agreement. The said sum shall be paid no later than the fifteen (15th) of the month succeeding the month in which the wages are paid.

(a) The parties hereto covenant and agree that no part of the contributions made to said Fund or on account of the provisions of this Agreement, shall be used for advertising, propaganda or other purpose opposed to the interest of Local Union 520.

(b) It is expressly understood, and agreed, that the money paid into the Industry Fund shall be used by the Association in payment of operating costs of the Association, including but not limited to the expense of conducting public relations, public education as applied to the plumbing and pipe fitting industry, costs and expenses connected with the promotion of the stability of the relations between labor and management, Association's cost of collective bargaining on an industry-wide basis, Association's cost of arbitration, Association's share of the fees of arbitration, Association's cost of their representatives and Administration of the various funds and committees as may be indicated by the Collective Bargaining Agreement now or to be entered into between the parties hereto, comparable undertakings engaged in from time to time, and for costs of liaison for the plumbing industry with architects and engineers.

(c) It is further expressly understood and agreed that the monies paid to the Industry Fund on account of the agreement of the parties hereto, are not intended to be and are not contributions to the employees, and no employee has any proprietary interest in the said Industry Fund.

(d) The Union shall be provided with the annual budget and financial

reports of the Industry Fund. The Union shall have the right to review the source documents upon which the reports are based.

(e) The Industry Fund shall be paid to the Contractors Association.

**Article XIX**
**SAVINGS PLAN**

49. In order to fund such Savings Plan as the parties have agreed to maintain, the Employer shall payout of the employee's wages after deduction for taxes to the Trustees of the Deferred Savings Plan or its administrative representative designated to receive the same according to the number of hours the employees actually work, the sum set forth on the inside cover of this contract per hour for the sole and only purpose of paying into a Deferred Savings Plan such as is provided for in a separate Deferred Savings Plan Agreement entered into by the parties hereto.

(a) The Trustees of the Deferred Savings Plan Fund shall administer the funds received for the Deferred Savings Plan in accordance with the Deferred Savings Plan Fund Agreement and such rules and regulations as they may promulgate with respect thereto and the provisions of the Deferred Savings Plan Fund and the rules and regulations promulgated by the Trustees shall be and are hereby incorporated herein by this reference hereto.

(b) Each employer who is a party to or is bound by this Agreement shall furnish the Administrator of the Deferred Savings Plan Fund with the information required by said Administrator in the form of a report which shall be used by or on behalf of the said Fund.

The Employer shall report Deferred Savings to the Administrator by the 15th day of the following month.

**Article XX**
**EMPLOYER'S BOND, REPORTING REQUIREMENTS –
DUE DATE OF CONTRIBUTIONS**

50. (a) BOND. Any Employer may be required to post a cash bond or other form of security to cover Health and Welfare, Pension, Annuity, Deferred Savings, Working Assessments and Apprentice Training contributions under this contract. The amount and the form of the bond posted and the surety posting the same shall be subject to the approval of the Union. The Union specifically reserves the right to decide when the Bond shall be posted, and its size, based on the expected duration of a project, the previous

delinquency records of an Employer or an Employer's lack of payment experience with the Funds.

(b) LEGAL ACTION TO OBTAIN RECORDS. If any Employer fails to furnish any necessary employment, personnel, or payroll records in accordance with standard auditing procedures, the Trustees may obtain the employment, personnel, or payroll records through resort to legal action. In the event of any such legal action, all service fees, court fees, court reporter fees and actual attorney fees shall be paid by the Employer, if it has been legally determined that there has been such failure as has been noted above.

(c) EMPLOYER'S DUTY TO FURNISH RECORDS-AUDITS. Each Employer shall promptly furnish to the Trustees, within ten days after demand, any and all necessary records of his employees, concerning the classification of such employees, their names, social security numbers, amount of wages paid and hours worked and any other payroll records and information that the Trustees may require in connection with the trust fund and for no other purpose. The Trustees or their authorized representative may examine the payroll books and records of each Employer whenever such examination is deemed necessary by the Trustees in connection with proper administration of the trust.

The Employer has a duty to report all employees. The statute of limitations shall not begin to run until the Employer complies with his duty to report or until the Fund discovers the Employer's failure to report.

(d) DUE DATE. All employer contributions for Health and Welfare, Pension, Annuity, Deferred Savings, Working Assessments and Apprenticeship Training shall be paid by the 15th day of the month following the work on account of which contributions are due.

## Article XXI
## ARBITRATION

51. GRIEVANCES.
Any and all disputes, complaints, controversies, or grievances whatsoever, except those matters specifically provided for in Article XXI hereof, between the Union or any employees and the Employer, which directly or indirectly arise under, out of, or in connection with or in any manner related to this Agreement or the breach thereof, or the acts, conduct or relations between the parties shall be adjusted as follows:

(a) A grievance of an individual Employee or group of Employees shall

be filed within ten (10) days of the date on which the Employee(s) knew or should have known of the alleged violation of this Agreement.

(b) The matter shall first be reduced to writing and taken up by and between the representative of the Union and the representative of the Employer, and they shall attempt to settle the same.

(c) ARBITRATION. If settlement satisfactory to the parties cannot be reached in twelve (12) hours from the time the matter is first presented under (b), it shall be submitted to the representative of the Union and the representative of the Association who must either arrive at a settlement satisfactory to the parties or select an impartial arbitrator within twenty-four (24) hours from the time the matter is first presented under (b).

(d) The arbitrator selected under (c) shall hear and determine the matter forthwith, i.e., within twenty-four (24) hours from the time the matter is submitted to him; and, he shall agree to hear the matter promptly and within twelve (12) hours of his selection by the parties under (c) hereof.

(e) If the parties are unable to agree upon the arbitrator under (c) hereof within the twenty-four (24) hour period therein provided either party may forthwith request the American Arbitration Association to designate and appoint an impartial arbitrator and this Agreement shall constitute a warrant of authority to the American Arbitration Association to make such designation and appointment, and that the same is hereby binding on the parties hereto. In cases where time is of the essence the American Arbitration Association shall make such appointment immediately and without first submitting names of persons to be selected as arbitrator to the parties and the arbitrator selected shall, unless a waiver is agreed to by the parties hereto, hear and determine the matter in accordance with (d) hereof. In cases where time is not of the essence the Rules of the American Arbitration Association for voluntary labor arbitration shall govern the selection of the arbitrator. In all cases those rules shall govern the subsequent arbitration proceedings.

(f) The decision of the arbitrator shall be final and binding upon the parties hereto. In the event of a default by either party in appearing before the arbitrator after written notice shall have been given to the said party by the arbitrator, or the American Arbitration Association, or the other party, the arbitrator is hereby authorized to render a decision upon the testimony of the party appearing.

**Article XXIII**
**PIPE FABRICATED OFF THE JOB**

53. No Employer shall require any employee as a condition of employment, to handle, erect or install fabricated pipe sent to the job which has not been fabricated by Building Trades Journeymen and Apprentices employed by an Employer under an agreement with the United Association or by its affiliated local union and receiving the prevailing building construction wage rate in effect wherever the pipe fabricating shop may be located. The refusal of any employee to handle, erect or install fabricated pipe in accordance with the rights hereinbefore set forth shall neither be a ground for discharge nor a violation of this Agreement. It shall not be a violation of this Agreement nor ground for discipline for an employee to further refuse to handle any product lacking the Local 520 union label where the presence of the label is required by Article XIII of this Agreement.

**Article XXIV**
**ALLOCATION**

The Union has the right to allocate a portion of wages to the annuity, savings and JATC. However, allocation to the health and welfare and/or pension funds will be made by the respective Fund Trustees upon recommendation of the fund's actuary.

**Article XXV**
**EMPLOYER DUTY TO COMPLETE PREVAILING WAGE SURVEYS**

Every Employer has an obligation to participate in all prevailing wage surveys conducted by the state and federal governments. An Employer's failure to complete and file such surveys in a timely manner with the appropriate government agency shall constitute a violation of this Agreement.

(g) The parties hereto may waive the time limits prescribed herein but such waiver shall apply only to the particular case in which it was made.

(h) If at the end of the current contract the parties are unable to resolve disputes over wages, hours or working conditions, both parties agree to submit the dispute to the Industrial Relations Council for the Plumbing and Pipe Fitting Industry, pursuant to its rules and further agree that all terms and conditions of this agreement shall continue in full force and effect, pending final decision by the Industrial Relations Council. However, any increase in wages, fringe benefit contributions or any other economic term arrived at subsequent to the end of the current contract by settlement of the parties or by decision of the Industrial Relations Council shall be retroactive to the day following the end of the current contract and for thirty (30) days thereafter.

(i) EXCLUSIVE REMEDY-NO STRIKES OR LOCKOUTS-EXCEPTIONS. The above procedure shall constitute the exclusive method for the handling of all disputes, complaints, controversies or grievances between the parties and there shall be neither strikes, stoppages, lockouts, pickets or proceedings in any court over matters within the scope of this provision unless and except where a party has failed to comply with the arbitration procedures herein provided for or to abide by any settlement of arbitrator's decision made pursuant to this Agreement.

(j) Nothing in this Agreement shall bar the utilization of the civil and criminal provisions of the Wage Payment and Collection Law of 1961, as amended.

**Article XXII**
**FRINGE BENEFIT AGREEMENTS**

52. (a) All the terms and provisions of the Health and Welfare Fund Agreement, Pension Fund Agreement, Savings Fund Agreement, Annuity Fund and Apprenticeship, Educational and Training Fund Agreement are incorporated into, and made a part of, this Contract Agreement as if fully set forth herein.

(b) Each Employer shall pay ten (.10) cents per hour for each hour worked to the International Training Fund. This payment shall be included with all of its other benefit fund payments required by this agreement and split out and transferred by the collection agent to the said International Training Fund.

## Article XXVI
### TERMINATION OF AGREEMENT

54. The termination date of this contract shall be midnight, April 30, 2015. Any party desiring to terminate this contract shall give the other party sixty (60) days' notice, in writing, of the intention to terminate prior to April 30, 2015. Failure of latter party to notify the other party of their intention to terminate by the manner aforesaid shall constitutes a renewal of the Agreement for an additional year. This Agreement shall not be reopened or renegotiated at any time other than on the anniversary date as set forth above, except pursuant to a joint written request for such signed by a representative of the Union and the Contractors Association.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this _____ day of _____, 2012, the foregoing contract to be effective as of May 1, 2012.

MECHANICAL CONTRACTORS ASSOCIATION OF CENTRAL PENNSYLVANIA, INC.

By:_____
        President

ATTEST:

_____
Secretary

LOCAL UNION 520 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE UNITED STATES AND CANADA

By:_____
        Business Manager

ATTEST:

_____
Secretary

34

## RECOGNITION/JOINDER

After the Union requested recognition, the Employer recognized the Union as the exclusive Section 9(a) bargaining representative of its employees and acknowledges that the Union has satisfactorily demonstrated and submitted proof thereof to the Employer that it represents a majority of the Employer's employees in an appropriate unit.

The undersigned Employer, being a non-member of the above described Mechanical Contractors Association of Central Pennsylvania ("Association"), hereby adopts and agrees to be bound by the terms and conditions of the foregoing collective bargaining contract with the same force and effect as though said Agreement had been entered into directly between the Union and the undersigned Employer. Whenever reference is made therein to the "Association" such term shall mean the undersigned Employer, and all language referring to the "parties" used in the foregoing collective bargaining contract shall also mean the undersigned Employer, except in regard to provisions regarding the establishment of benefit funds, the submission of disputes over a successor agreement of the Industrial Relations Council and the Union's waiver to its right to strike in connection therewith (Paragraph 51(h), (i)).

In addition, the Employer accepts the Association-appointed trustees of the benefit funds as its employer representatives and agrees to enter into standard joinder agreements with those funds.

Contractor:_____

Signature:_____        Date:_____

Print Name:_____        Title:_____

Local Union No. 520
Terry E. Peck, Business Manager

Signature:_____        Date:_____

35

**United Association**
**Standard for Excellence**

## MEMBER AND LOCAL UNION RESPONSIBILITIES

To ensure the UA Standard for Excellence platform meets and maintains its goals, the Local Union Business Manager, in partnership with his implementation team, including shop stewards and the local membership, shall ensure all members:

- Meet their responsibilities to the employer and their fellow workers by arriving on the job ready to work, every day on time (Absenteeism and tardiness will not be tolerated.)
- Adhere to the contractual starting and quitting times, including lunch and break periods (Personal cell phones will not be used during the workday with the exception of lunch and break periods.)
- Meet their responsibility as highly skilled craftworkers by providing the required tools as stipulated under the local Collective Bargaining Agreement while respecting those tools and equipment supplied by the employer
- Use and promote the local union and international training and certification systems to the membership so they may continue on the road of lifelong learning, thus ensuring UA craftworkers are the most highly trained and sought after workers
- Meet their responsibility to be fit for duty, ensuring a zero tolerance policy for substance abuse is strictly met
- Be productive and keep inactive time to a minimum
- Meet their contractual responsibility to eliminate disruptions on the job and safely work towards the on-time completion of the project in an auspicious manner
- Respect the customers' property (Waste and property destruction, such as graffiti, will not be tolerated.)
- Respect the UA, the customer, client and contractor by dressing in a manner appropriate for our highly skilled and professional craft (Offensive words and symbols on clothing and buttons are not acceptable.)
- Respect and obey employer and customer rules and policies
- Follow safe, reasonable and legitimate management directives

## EMPLOYER AND MANAGEMENT RESPONSIBILITIES

MCAA/MSCA, PFI, MCPWB, PCA; UAC and NFSA and their signatory contractors have the responsibility to manage their jobs effectively, and as such have the following responsibilities under the UA Standard for Excellence.

- Replace and return to the referral hall ineffective superintendents, general foremen, foremen, journeyworkers and apprentices
- Provide worker recognition for a job well done

36

- Ensure that all necessary tools and equipment are readily available to employees
- Minimize workers' downtime by ensuring blueprints, specifications, job layout instructions and material are readily available in a timely manner
- Provide proper storage for contractor and employee tools
- Provide the necessary leadership and problem-solving skills to jobsite supervision
- Ensure jobsite leadership takes the necessary ownership of mistakes created by management decisions
- Encourage employees, but if necessary, be fair and consistent with discipline
- Create and maintain a safe work environment by providing site specific training, proper equipment and following occupational health and safety guidelines
- Promote and support continued education and training for employees while encouraging career building skills
- Employ an adequate number of properly trained employees to efficiently perform the work in a safe manner, while limiting the number of employees to the work at hand, thereby providing the customer with a key performance indicator of the value of the UA Standard for Excellence.
- Treat all employees in a respectful and dignified manner, acknowledging their contributions to a successful project
- Cooperate and communicate with the job steward

### PROBLEM RESOLUTION THROUGH THE UA STANDARD FOR EXCELLENCE POLICY

Under the UA Standard for Excellence it is understood, that members through the local union, and management through the signatory contractors, have duties and are accountable in achieving successful resolutions.

## MEMBER AND LOCAL UNION RESPONSIBILITIES

- The local union and the steward will work with members to correct and solve problems related to job performance.
- Job stewards shall be provided with steward training and receive specialized training with regard to the UA Standard for Excellence.
- Regular meetings will be held where the job steward along with UA supervision will communicate with the management team regarding job progress, work schedules, and other issues affecting work processes.
- The job steward shall communicate with the members about issues affecting work progress.
- The Business Manager or his delegate will conduct regularly

37

scheduled meetings to discuss and resolve issues affecting compliance of the UA Standard for Excellence policy.

• The steward and management will attempt to correct such problems with individual members in the workplace.

• Individual members not complying with membership responsibility shall be brought before the Local Union Executive Board, which will address such members' failure to meet their obligation to the local and the UA, up to and including filing charges. The local union's role is to use all available means to correct the compliance problem.

## EMPLOYER AND MANAGEMENT RESPONSIBILITIES

• Regular meetings will be held where the management team and UA supervision will communicate with the job steward regarding job progress, work schedules, and other issues affecting the work process.

• Management will address concerns brought forth by the steward or UA supervision in a professional and timely manner.

• A course of action shall be established to allow the job steward and/or UA supervision to communicate with higher levels of management in the event there is a breakdown with the responsible manager.

• In the event that the employee is unwilling or unable to make the necessary changes, management must make the decision whether the employee is detrimental to the UA Standard for Excellence platform and make a decision regarding his/her further employment.

## ADDITIONAL JOINTLY SUPPORTED METHODS OF PROBLEM SOLVING

• In the event an issue is irresolvable at this level, the local or the contractor may call for a contractually established labor management meeting to resolve the issues.

• Weekly job progress meetings should be conducted with job stewards, UA supervision and management.

• The local or the contractor may involve the customer when their input is prudent in finding a solution.

• Foremen, general foremen, superintendents and other management should be educated and certified as leaders in the UA Standard for Excellence policy.

# APPENDIX A

This Agreement shall apply to and cover all employees of an Employer employed to perform or performing plumbing, heating and piping work as listed hereinafter within the geographical jurisdiction allocated to the local union by the United Association:

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, gray water systems, sewage and vent lines.

2. All piping for water filters, water softeners, water meters and the setting of same.

3. All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances, and the handling and setting of the above mentioned equipment.

4. All water services from mains to buildings, including water meters and water meter foundations.

5. All water mains from whatever source, including branches and fire hydrants, etc.

6. All down spouts, drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm water sewers, septic tanks, cesspools, water storage tanks, gray water, rainwater and reclaimable water collection of every type and description used for plumbing and pipefitting systems, etc.

7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.

8. All bathroom, toilet room and shower room accessories, i.e. as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.

9. All lawn sprinkler work, including piping, fittings, and lawn sprinkler heads.

10. All sheet lead lining for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flashings in connection with the pipe fitting industry.

11. All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose, cabinets and accessories, and all piping for sprinkler work of every description.

12. All block tin coils, carbonic gas piping for soda fountains and bars, etc.

13. All piping for railing work and racks of every description, whether screwed or welded.

14. All piping for pneumatic vacuum cleaning systems of every description.

15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motor cars, and railway locomotives.

16. All marine piping, and all piping used in connection with ship building and ship yards.

17. All power plant piping of every description.

18. The handling, assembling, and erecting of all economizers, super-heaters, regardless of the mode or method of making joints, hangers, and erection of same.

19. All internal and external piping on boilers, heaters, tanks and evaporators, water legs, water backs and water grates, boiler compound equipment, etc.

20. All soot blowers and soot collecting piping systems.

21. The setting, erecting, and piping for all smoke consuming and smoke washing and regulating devices.

22. The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining, and industrial work.

23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling, and brewing plants, heating, ventilating and air-conditioning systems.

24. All piping for artificial gases, natural gases, and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes, as well as all radon piping and all methane recovery systems.

25. The setting and erecting of all underfeed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping, and all accessories and parts of burners and stokers, etc.

26. All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

27. The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps, and mixing devices, and piping thereto of every description.

28. The setting, erecting and piping of all cooling units, pumps, reclaiming systems, and appurtenances, in connection with transformers, and piping to switches of every description.

29. All fire extinguishing systems and piping, valves, or hand detail drawing, whether by water, steam, gas, or chemical, fire alarm piping, and control tubing, etc.

30. All piping for sterilizing, chemical treatment, deodorizing, and all cleaning systems of every description, and laundries for all purposes.

31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

32. All piping for power or heating purposes, either by water, air,

steam, gas, oil, chemicals, interior geothermal piping beginning at five (5) feet from exterior wall, solar or any other method.

33. All piping, setting and hanging of all units and fixtures for air-conditioning, cooling, heating, roof cooling, refrigerating, ice making, humidifying, dehumidifying and dehydrating by any method, and the charging, testing, and servicing of all work after completion.

34. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.

35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers, and boilers and cooking utensils, etc. of every description.

36. All piping in connection with central distributing filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, and aeration basins.

37. All process piping, valves, or hand detail drawing for refining, manufacturing, industrial, and shipping purposes of every character and description.

38. All air piping of every description.

39. All temporary piping of every description in connection with building and construction work, excavating and underground construction.

40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers (including all seismic hangers), conduit and boxes, used in connection with the pipe fitting industry.

41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.

42. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, water lines, and booster stations of every description.

43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints, or any other mode or method of making joints in connection with the pipe fitting industry.

44. Laying out, cutting, bending and fabricating of all pipe work of every description, by whatever mode or method.

45. All methods of stress relieving of all pipe joints made by every mode or method.

46. The assembling and erecting of tanks, used for mechanical, manufacturing or industrial purposes, to be assembled with bolts, packed or welded joints.

47. The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the pipe fitting industry.

## APPENDIX B

### SEPARATION NOTICE
#### Plumbers, Pipefitters & HVACR Technicians Local 520

Name: _____   Date: _____

☐ Journeyman  ☐ Apprentice  ☐ Helper  ☐ Tradesman

**EMPLOYMENT SEPARATION FOR REASON(S) CHECKED BELOW**
*(More than one can be checked)*

☐ **Reduction in force**

☐ **Absenteeism**
(Complete work record)

☐ **Insubordination**
(Comments required)

☐ **Resignation**
(Comments required)

☐ **Non-compliance w/ company policy**
(Comments required)

☐ **Unsatisfactory work performance**
(Comments required)

☐ **Violation of safety rules**
(Comments required)

☐ **Tardiness**
(Comments required)

**WORK RECORD**

| Week Ending | | | |
|---|---|---|---|
| Hours Available | | | |
| Hours Worked | | | |
| Days Late | | | |

☐ **COMMENTS** (State reason): _____

_____

_____

Firm: _____

Supervisor: _____   Title: _____

Project: _____   Job Phone: _____

Supervisor Signature: _____

Employee Signature: _____

Upon layoff, please provide one copy of the form to the employee and one copy to Local 520 via fax to 717-541-8908 or email to local520@local520.com.

43

---

48. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen members of the United Association.

49. All piping for cataracts, cascades (i.e. artificial water falls), make-up water fountain, captured waters, water towers, cooling towers, and spray ponds used for industrial, manufacturing, commercial, or for any other purposes.

50. Piping herein specified means pipe made from metals, tile, glass, rubber, plastics, wood, or any other kind of material, or product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shapes.

Any jurisdictional disputes which might develop from the foregoing Appendix will wherever possible be settled by reference to the PLAN FOR THE SETTLEMENT OF JURISDICTIONAL DISPUTES IN THE CONSTRUCTION INDUSTRY (Green Book).

42

## List of Members of
## Mechanical Contractors Association

**Edwin L. Heim Company**
1918 Greenwood Street, Harrisburg, PA 17105
(717) 233-8711 www.elheim.com

**Enginuity, LLC**
203 Lynndale Court, Mechanicsburg, PA 17050
(717) 796-9226 www.enginuity-llc.com

**G. M. McCrossin, Inc.**
2780 Benner Pike, Bellefonte, PA 16823
(814) 355-4848 www.gmmccrossin.com

**G.R. Sponaugle & Sons, Inc.**
P.O. Box 4456, Harrisburg, PA 17111-0456
(717) 564-1515 www.grsponaugle.com

**McClure Company, Inc.**
P.O. Box 1579, Harrisburg, PA 17105-1579
(717) 232-9743 www.mcclureco.com

---

## PLUMBERS, PIPEFITTERS AND HVACR TECHNICIANS LOCAL 520

7193 Jonestown Road
Harrisburg, Pennsylvania 17112
(717) 652-3135
www.local520.com

Business Manager
TERRY E. PECK

Financial Secretary-Treasurer
FRANK M. KELLY

Business Agents
JAMES G. CARPENTER
SCOTT E. CHRIST
RONALD E. ENDERS
JAY P. NENNINGER

**EXHIBIT B**

## *Plumbers, Pipefitters and HVACR Technicians*



### *Local Union 520*
7193 Jonestown Road • Harrisburg, PA 17112
*Phone:* 717.652.3135 • *Fax:* 717.541.8908 • www.local520.com

Plumbers ✦ Pipefitters ✦ HVACR Technicians ✦ Plumbers ✦ Pipefitters ✦ HVACR Technicians

| | | | |
|---|---|---|---|
| *Business Manager*<br>Terry E. Peck | *Business Agents*<br>James G. Carpenter<br>Scott E. Christ | *Business Agents*<br>Ronald E. Enders<br>Jay P. Nenninger | *Financial Secretary*<br>Frank M. Kelly |

### **RECOGNITION/JOINDER**

After the Union requested recognition, the Employer recognized the Union as the exclusive Section 9(a) bargaining representative of its employees and acknowledges that the Union has satisfactorily demonstrated and submitted proof thereof to the Employer that it represents a majority of the Employer's employees in an appropriate unit.

The undersigned Employer, being a non-member of the above-described Mechanical Contractors Association of Pennsylvania ("Association"), hereby adopts and agrees to be bound by the terms and conditions of the foregoing collective bargaining contract with the same force and effect as though said Agreement had been entered into directly between the Union and the undersigned Employer. Whenever reference is made therein to the "Association" such term shall mean the undersigned Employer, and all language referring to the "parties" used in the foregoing collective bargaining contract shall also mean the undersigned Employer, except in regard to provisions regarding the establishment of benefit funds, the submission of disputes over a successor agreement of the Industrial Relations Council and the Union's waiver of its right to strike in connection therewith (Paragraph 51(g), (h)).

In addition, the Employer accepts the Association-appointed trustees of the benefit funds as its employer representatives and agrees to enter into standard joinder agreements with those funds.

Contractor: Gas Field Specialists

Signature: Brad West

Print Name: Brad West

Date: 6-11-12

Title: V.P. Operations

Local Union No. 520
Terry E. Peck, Business Manager

Signature: *[signature]*

Date: 6-15-12