IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK KELLY and TODD C. RAY,** : <br> As Trustees of the **PLUMBERS** : <br> **AND PIPEFITTERS LOCAL NO.** : <br> **520 HEALTH AND WELFARE** : <br> **FUND; PLUMBERS AND** : <br> **PIPEFITTERS LOCAL NO. 520** : <br> **PENSION FUND; PLUMBERS** : <br> **AND PIPEFITTERS LOCAL NO.** : <br> **520 ANNUITY FUND,** : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> : <br> **GAS FIELDS SPECIALISTS, INC.,** : <br> : <br> **Defendant** : | CIVIL ACTION NO. 1:14-CV-4 <br><br> (Chief Judge Conner) |

## MEMORANDUM

Plaintiffs Frank Kelly and Todd C. Ray, as trustees of the Plumbers and Pipefitters Local No. 520 ("Local 520") Health and Welfare Fund, Pension Fund, and Annuity Fund, (collectively, "the Funds"), commenced the above-captioned action pursuant to Section 502(a) and Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a), 1145, against defendant Gas Field Specialists, Inc., ("Gas Field"), seeking an audit of Gas Field's employment and payroll records and remission of allegedly delinquent contributions to the Funds. At the parties' request, the court entered an order limiting initial Rule 56 motion practice to the question of liability. Presently pending before the court are the parties' respective cross-motions (Docs. 21, 27) for summary judgment. For the reasons that follow, the court will grant the Funds' motion, deny Gas Field's motion, and enter judgment in favor of the Funds as to liability.

I. **Factual Background**[1] **and Procedural History**

The pertinent facts undergirding the parties' opposing motions are largely undisputed. Plaintiffs Frank Kelly and Todd C. Ray are trustees of the Plumbers and Pipefitters Local No. 520 ("Local 520") Health and Welfare Fund, Plumbers and Pipefitters Local No. 520 Pension Fund, and Plumbers and Pipefitters Local No. 520 Annuity Fund (collectively, "the Funds"). (See Doc. 28 ¶ 1; Doc. 31 ¶ 1). The parties agree that each Fund is structured as a multiemployer employee benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA. (See Doc. 28 ¶¶ 1-2; Doc. 31 ¶¶ 1-2); see also 29 U.S.C. § 1002(3), (37). The parties further agree that defendant Gas Field Specialists, Inc., ("Gas Field"), is an "employer" and that Local 520 is an "employee organization" within the meaning of the statute. (See Doc. 28 ¶¶ 3-4; Doc. 31 ¶¶ 3-4); see also 29 U.S.C. § 1002(4)-(5).

Local 520 is a party to a collective bargaining agreement, identified by the parties and herein as "the 2012-2015 Agreement," with the Mechanical Contractors Association of Central Pennsylvania ("MCA"). (Doc. 25 ¶ 1; Doc. 32 ¶ 1). Local 520 is also a party to collective bargaining agreements with employers that are not MCA members, such as Gas Field. (See Doc. 25 ¶ 3; Doc. 32 ¶ 3). Gas Field became a

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual information contained herein derives from the parties' statements of material facts. (See Docs. 25, 28, 31, 32). To the extent facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the parties' statements of material facts.

party to the 2012-2015 Agreement by virtue of a document titled "RECOGNITION / JOINDER" (the "2012-2015 Recognition"), signed June 11, 2012, by Bradley West, Gas Field's Vice President of Operations. (See Doc. 25 ¶¶ 4-5, 30; Doc. 32 ¶¶ 4-5, 30). The 2012-2015 Recognition provides that Gas Field "adopts and agrees to be bound by the terms and conditions of the [2012-2015 Agreement]." (Doc. 22, Ex. B (herein "2012-2015 Recognition")).

Article I of the 2012-2015 Agreement states that the employer, Gas Field, recognizes Local 520 "as the exclusive section 9(a) bargaining representative of its employees . . . ." (Doc. 25 ¶ 5; Doc. 32 ¶ 5; see also Doc. 22, Ex. A ¶ 6 (herein, "2012-2015 Agreement")). Article II of the 2012-2015 Agreement enumerates the "trade or work jurisdiction" of the agreement, stating that it "covers the rates of pay, rules and working conditions of all journeymen and apprentices engaged in . . . all other

types of work specified in Appendix A attached to this agreement . . . ."[2] (2012-2015 Agreement ¶ 7(a)). Appendix A, in turn, states: "This Agreement shall apply to and cover all employees of an Employer employed to perform or performing plumbing, heating and piping work as listed hereinafter within the geographical jurisdiction allocated to the local union by the United Association," before proceeding to list fifty (50) specific types of covered plumbing, heating, and piping work. (See 2012-2015 Agreement, Appendix A). The 2012-2015 Agreement contains no language limiting its application to union employees, nor does it contain language limiting its

---

[2] The Agreement enumerates specific covered work activities before the Appendix A catch-all, as follows:

> . . . installation of all plumbing and/or pipe fitting systems, solar systems, solar panels, and component parts thereof, including jobbing, service, repair work, oil burner work, setting of boilers, refrigeration and air conditioning service or installation, fabrication, assembling, erection, installation, dismantling, repairing, reconditioning, adjusting, altering, servicing, handling, cutting and drilling all holes and chasing except where an air or jack hammer or other power actuated hammer (30 pounds and above) is employed, unloading, distributing, reloading, tying-on, and hoisting of all piping materials, appurtenances and equipment, by any method, including all hangers and supports of every description and all other work included in the trade jurisdiction claims of the United Association, such as, and including but not limited to, the laying of sewer pipes, whether sanitary or storm, consisting of mains which are not serviced by manhole access and also the laying of all lateral sewer pipes, sanitary and storm, from the main sewer whether serviced by manhole access or not into the dwelling, project, or other facility, handling and setting of septic tanks (except concrete) and in addition, all other types of work specified on Appendix A attached to this agreement . . . .

(2012-2015 Agreement ¶ 7(a)).

application to specific projects.  (See 2012-2015 Agreement; see also Doc. 25 ¶ 42; Doc. 32 ¶ 42 (West testifying that there is not "any writing in existence that would describe or define which jobs or projects [the 2012-2015 Agreement] applies to")). The Funds thus assert that, by virtue of the "all employees of an Employer" phrase in Appendix A, "Gas Field agreed to submit contributions to the Funds for *all* employees covered by the 2012-2015 Agreement," union membership and job assignment notwithstanding.  (Doc. 25 ¶ 9 (emphasis added)).

Gas Field responds that the parties historically limited application of the collective bargaining agreements to Local No. 520 employees working on specific projects under West's direction.  (See Doc. 32 ¶ 9).  Two prior iterations of the agreement between the Local 520 and Gas Field contained project-specific limitations.  (See Doc. 25 ¶¶ 43-44; Doc. 32 ¶¶ 43-44).  The 2003-2006 collective bargaining agreement contains a handwritten notation that states: "Greenlick ESP Project 9/28/04."  (Doc. 24, Ex. G at 30; see also Doc. 25 ¶ 43; Doc. 32 ¶ 43).  And a recognition signed by West adopting a 2006-2009 collective bargaining agreement states: "Agreement specific to Earls well hookup and pipeline, Bentley Creek, PA, job duration from Jan 20, 2006 to Feb 28, 2006."  (Doc. 24, Ex. J at 1).  According to West's deposition testimony, "[a]lthough subsequent agreements signed by the parties did not always contain similar restrictions, it was always [West's]

5

understanding that the Local 520 Union contract only applied to projects under his control within the company. . . ." (Doc. 28 ¶ 6).[3]

The 2012-2015 Agreement mandates that its party-employers make certain contributions to the Funds.[4] (See Doc. 25 ¶¶ 10-12; Doc. 32 ¶¶ 10-12). The Health and Welfare Fund and Pension Fund articles require contributions based on hours worked by "each apprentice and journeyman covered by this agreement," and the Annuity Fund article requires contributions for hours worked by "each employee." (Doc. 25 ¶¶ 10-12; Doc. 32 ¶¶ 10-12; see also Doc. 22, Ex. A ¶¶ 46-47 (herein "2012-2015 Agreement")). The Funds do not dispute that, under prior iterations of the agreement, Gas Field did not make contributions for non-Local 520 employees. (See Doc. 28 ¶¶ 7-8).[5]

By letter dated September 9, 2013, the Funds' contract administrator, PATH Administrators, informed Gas Field that it was randomly selected for an employer audit to be performed by Calibre CPA Group PLLC ("Calibre"). (See Doc. 25 ¶ 18;

---

[3] The Funds do not deny the substance of this averment, nor do they cite any contrary record evidence in their responsive filing. Rather, the Funds simply deny "that the facts asserted . . . are material facts with respect to the issues to be tried, as required by LR 56.1." (Doc. 31 ¶ 6). As a result of the Funds' failure to controvert Gas Field's statement, the court deems this testimony to be undisputed. See LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

[4] Consistent with the court's directive, the parties' Rule 56 motions are limited exclusively to the issue of liability. The issue of damages is not before the court at this time. Hence, the court will not discuss the mechanics of the various contribution provisions herein.

[5] The Funds dispute the relevance of this fact, but offer no argument or evidence to refute the fact itself. See LOCAL RULE OF COURT 56.1.

Doc. 32 ¶ 18). Calibre requested and received from Gas Field a copy of its employee list, containing both Local 520 and non-Local 520 employees. (Doc. 25 ¶¶ 22-23; Doc. 32 ¶¶ 22-23). Calibre discovered that the monthly contribution remittance forms submitted by Gas Field to the Funds included only Local 520 employees. (See Doc. 25 ¶¶ 24-25, 64; Doc. 32 ¶¶ 24-25, 64). According to Gas Field, it was notified of the audit shortly after a meeting with new Local 520 management during which Local 520 insisted that the 2012-2015 Agreement "should cover 'anyone that touches the pipe.'" (Doc. 28 ¶ 9).[6]

The Funds, through trustees Frank Kelly and Todd C. Ray, commenced this action on January 2, 2014, with the filing of a complaint. (Doc. 1). The complaint seeks an audit of Gas Field's relevant employment and payroll records and, if the audit reveals that Gas Field is noncompliant with contribution obligations, damages pursuant to ERISA. (See id.) Following a period of discovery, the parties filed the instant cross-motions (Docs. 21, 27) for summary judgment, limited to the issue of liability. Both motions are fully and timely briefed and ripe for disposition.

## II.   Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of

---

[6] The Funds again dispute the statement's relevance, but offer no argument or evidence to refute the fact itself. See LOCAL RULE OF COURT 56.1.

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (observing that Rule 56 standards apply with equal force to cross-motions for summary judgment); see also Johnson v. Federal Express Corp., 996 F. Supp. 2d 302, 311 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2014). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)); see also Allah v. Ricci, 532 F. App'x 48, 50 (3d Cir. 2008) ("The same standards and burdens apply on cross-motions for summary judgment." (citing Appelmans v. City of Phila., 825 F.2d 214, 216 (3d Cir. 1987)).

### III. Discussion

The instant dispute, distilled to its essence, presents a discrete and singular inquiry: Does the 2012-2015 Agreement require Gas Field to contribute to the Funds on behalf of *all* of its employees, regardless of union or job status, or does it only require contributions on behalf of union members assigned to designated jobs?

The parties offer diametrically opposed answers to this central question.  Gas Field contends that, although no language in the agreement establishes the limitations it proposes, the parties have historically limited the agreement's application to Local 520 members working on specific projects.  (Doc. 33 at 2 ("[A]lthough subsequent agreements did not contain such language [that the contract was limited to a specific project], the parties continued to operate as if the agreement was really a project-by-project one")).  The Funds maintain that the plain language of the 2012-2015 Agreement requires contributions on behalf of *all* employees, regardless of union or job status.  (See Doc. 26 at 21-28).[7]  This question is purely one of law, tasking the court to determine whether the 2012-2015 Agreement unambiguously applies to all of Gas Field's employees.  If it does, summary judgment in favor of the Funds is appropriate, and the matter must proceed to a damages determination; if it does not, the law compels judgment in favor of Gas Field.

Section 515 of the Employee Retirement Income Security Act ("ERISA") provides that every employer "obligated to make contributions to a multiemployer plan under . . . the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such . . . agreement."  29 U.S.C. § 1145.  Federal law governs the interpretation of the "terms and conditions" of collective bargaining agreements and benefit plans.  See Sheet Metal Workers Int'l Assn., Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1284 (3d Cir. 1991) (citing Textile Workers Union v. Lincoln

---

[7] The parties vehemently dispute the agreements' scope, but no party challenges its validity.

Mills, 353 U.S. 448, 456 (1957)). The question of whether a given term in such an agreement or plan is ambiguous is a legal inquiry for the court's resolution. See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc. ("Rolls-Royce"), 989 F.2d 132, 135 (3d Cir. 1993) (citing Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992)); Sheet Metal Workers, 949 F.2d at 1284. In making this determination, the court should "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Sheet Metal Workers, 949 F.2d at 1284 (quoting Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). However, extrinsic evidence may not be used to manufacture ambiguities where none otherwise exist. See Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am. v. Skinner Engine Co., 188 F.3d 130, 145 (3d Cir. 1999).

Gas Field does not assert that the language of the agreement is ambiguous, and the court independently discerns no ambiguity therein. Gas Field, in the 2012-2015 Recognition, "recognized [Local 520] as the exclusive Section 9(a) bargaining representative of its employees . . . ." (Doc. 25 ¶¶ 4-5; Doc. 32 ¶¶ 4-5; also 2012-2015 Recognition). Identical language appears at Article I of the 2012-2015 Agreement itself. (See Doc. 25 ¶ 5; Doc. 32 ¶ 5; also 2012-2015 Agreement ¶¶ 6(a)-(b)). In Article II, the agreement states its purpose of covering "rates of pay, rules and working conditions of *all journeymen and apprentices* engaged in . . . all other types of work specified in Appendix A attached to this agreement . . . ." (2012-2015 Agreement ¶ 7(a) (emphasis added)). Appendix A, in turn, broadly states: "This Agreement shall

10

apply to and cover *all employees of an Employer* employed to perform or performing plumbing, heating and piping work as listed herein after within the geographical jurisdiction allocated to the local union by the United Association." (See 2012-2015 Agreement, Appendix A (emphasis added)).

The language of the agreement betrays Gas Field's proposed limitation. It cannot be reasonably disputed that the 2012-2015 Agreement applies to and covers "all employees" of Gas Field, regardless of union membership or job assignment. The court concludes that the phrase "all employees of the Employer" within the 2012-2015 Agreement is entirely unambiguous.[8] It logically follows that "each apprentice and journeyman covered by this agreement" and "each employee" as used through the various articles establishing the Funds likewise apply, without limitation, to *all* employees of Gas Field. (See 2012-2015 Agreement ¶¶ 46-47).

The court's analysis thus turns to a finer point: whether Gas Field has a defense to its unambiguous contractual obligation. Federal courts intentionally limit the defenses available to employers against third-party fund administrators in order to "prevent union corruption and protect employee expectations." Rolls-

---

[8] Additionally, the agreement is replete with other references to "employees" without making a distinction between union and non-union members or referring to specific projects. (See, e.g., 2012-2015 Agreement ¶ 14(a) (requiring employer to first give the union an opportunity to refer a qualified applicant when hiring new employees); ¶¶ 19-20 (relating to hours of work and overtime pay)). This total lack of ambiguity distinguishes the matter *sub judice* from other cases which looked to the intent of the contracting parties in defining covered employees. Cf. Rolls-Royce, 989 F.2d at 136-37 (finding the phrase "all employees" in collective bargaining agreement to be ambiguous in determining whether employer was required to contribute to funds on behalf of "probationary" employees when probationary employees were treated differently than regular employees throughout the collective bargaining agreement).

Royce, 989 F.2d at 138 (citing Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314-16 (2d Cir. 1990)). In other words, to protect the integrity of third-party benefit funds, the law prohibits unions and employers from unilaterally modifying the terms of unambiguous written agreements. See id. (citing Benson, 907 F.2d at 314-16). Courts recognize only three defenses to an employer's contribution obligations: "(1) the pension contributions themselves are illegal; (2) the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution, and not merely voidable, as in the case of fraudulent inducement; and (3) the employees have voted to decertify the union as its bargaining representative." Agathos v. Starlite Motel, 97 F.2d 1500, 1505-06 (3d Cir. 1992). In articulating these limited defenses, the Third Circuit Court of Appeals in Agathos expressly rejected "oral promises to disregard the text of the agreement" as a defense to contribution obligations. See id. That defense, according to the Third Circuit, is one of fraud in the inducement—not fraud in the execution—and is not cognizable against fund administrators. See id.

As a threshold matter, the court can conceive of no reason why the contributions sought by the Funds would be unlawful, nor is there any evidence that Local 520 employees have voted for decertification. Hence, the only defense potentially available to Gas Field is that the 2012-2015 Agreement is void *ab initio* for fraud in the execution. See Agathos, 97 F.2d at 1505. To prevail on this defense, an employer must demonstrate "excusable ignorance of the contents of the writing signed." Id. at 1505-06 (citing Southwest Admins., Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986)). In Connors v. Fawn Mining Corp., 30 F.3d 483 (3d Cir.

12

1994), the Third Circuit Court of Appeals contrasted fraud in the inducement and fraud in the execution, explaining that "the former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is." Connors, 30 F.3d at 490 (quoting Rozay's Transfer, 791 F.2d at 774). Gas Field offers neither evidence nor argument warranting its inclusion in the latter category.

Despite Gas Field's blanket assertion that it tacitly agreed with Local 520 to limit the scope of the 2012-2015 Agreement, Gas Field presents no evidence of such an agreement. (See generally Doc. 28 ¶¶ 1-13; see also Doc. 25 ¶¶ 32, 42 (West did not speak to anyone prior to signing the 2012-2015 Recognition, nor was the alleged modification put in writing)). Assuming *arguendo* that such an agreement did exist, Agathos and its progeny squarely foreclose any oral modification defense as against the Funds. See id. at 1505-06; see also IBEW Local Union No. 102 v. Quality Electric & Data, Inc., 488 F. App'x 603, 606 (3d Cir. 2012) (nonprecedential) (citing Agathos and rejecting employer's argument that employer and union orally agreed to apply contract only to union employees on union jobs).[9] Gas Field neither asserts nor proves that it was unaware of the contents of the 2012-2015 Agreement, and the

---

[9] The court acknowledges that Quality Electric is a nonprecedential decision. Nonetheless, the court is persuaded, and its analysis guided, by the panel's *ratio decidendi* and the policy considerations underlying the same. Quality Electric was decided on substantially similar facts to those *sub judice*, in the context of a pre-hire agreement unique to the construction industry. See Quality Electric, 48 F. App'x at 604-05. The employer argued, in part, that it had agreed with the union to limit the collective bargaining agreement—and thus its pension fund contributions—to union employees working on union jobs. See id. at 607. Relying on Agathos, the court rejected the proposed defense and concluded that the employer was liable for contributions on behalf of both union and non-union employees. See id. at 606-07.

record simply does not admit of any plausible defense to Gas Field's contribution obligations. See Agathos, 97 F.2d at 1505-06. Hence, Gas Field cannot avoid its obligation to contribute to the Funds on behalf of *all* of its employees, and the Funds are entitled to judgment as a matter of law pursuant to Section 515 of ERISA.

## IV.  Conclusion

For all of the reasons stated herein, the court will grant the Funds' motion (Doc. 21) and deny Gas Field's motion (Doc. 27) pursuant to Federal Rule of Civil Procedure 56. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     August 18, 2015