# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK KELLY and TODD C. RAY,** As Trustees of the **PLUMBERS AND PIPEFITTERS LOCAL NO. 520 HEALTH AND WELFARE FUND; PLUMBERS AND PIPEFITTERS LOCAL NO. 520 PENSION FUND; PLUMBERS AND PIPEFITTERS LOCAL NO. 520 ANNUITY FUND,** | : : : : : : : : : : : | **CIVIL ACTION NO. 1:14-CV-4**  (Chief Judge Conner) |
| **Plaintiffs** | : : | |
| v. | : : | |
| **GAS FIELD SPECIALISTS, INC.,** | : : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiffs Frank Kelly and Todd C. Ray, as trustees of the Plumbers and Pipefitters Local No. 520 Health and Welfare Fund, Pension Fund, and Annuity Fund, commenced the above-captioned action pursuant to Section 502(a) and Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a), 1145, against defendant Gas Field Specialists, Inc. ("Gas Field"). The court previously entered summary judgment against Gas Field on the question of liability and reserved the issue of damages for further proceedings. (Doc. 36). In lieu of a bench trial, the parties stipulated to relevant facts (Doc. 50) and submitted briefs articulating their respective positions regarding proper damages. (See Docs. 52, 53). We set forth our findings of fact and conclusions of law herein pursuant to Federal Rule of Civil Procedure 52(a).

I.  **<u>Findings of Fact and Procedural Background</u>**[1]

Plaintiffs Frank Kelly and Todd C. Ray are trustees of the Local 520's Health and Welfare Fund, Pension Fund, and Annuity Fund (collectively, "the Funds"). (Doc. 35 at 2). Each Fund is structured as a multiemployer employee benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA. (Id.); see also 29 U.S.C. § 1002(3), (37). The parties agree that Gas Field is an "employer" and Local 520 is an "employee organization" within the meaning of the statute. (See Doc. 35 at 2); see also 29 U.S.C. § 1002(4)-(5).

Local 520 is party to a collective bargaining agreement, identified by the parties and herein as the "2012-2015 Agreement," with the Mechanical Contractors Association of Central Pennsylvania ("MCA"). (Doc. 35 at 2). Local 520 is also party to collective bargaining agreements with employers that are not MCA members, such as Gas Field. (Id.) Gas Field became a party to the 2012-2015 Agreement by virtue of a document titled "RECOGNITION / JOINDER," referred to by the parties as the "2012-2015 Recognition," which provides that Gas Field "adopts and agrees to be bound by the terms and conditions of the [2012-2015 Agreement]." (Id. at 2-3).

The Funds, through the trustees, commenced this action on January 2, 2014. (Doc. 1). Therein, the trustees sought an audit of Gas Field's relevant employment and payroll records, as well as any applicable damages authorized by the 2012-2015 Agreement and ERISA. (See id.) Following a period of discovery, the parties filed

---

[1] We detailed the undisputed procedural and factual background *in extenso* in our Rule 56 memorandum (Doc. 35), familiarity with which is presumed. We cite to that memorandum for factual context and to the parties' joint stipulation of facts (Doc. 50) as pertains the issue of damages.

2

cross-motions (Docs. 21, 27) for summary judgment limited to the issue of liability. The parties vigorously disputed whether the 2012-2015 Agreement obligated Gas Field to contribute to the Funds on behalf of *all* Gas Field employees, regardless of union or job status, or only on behalf of Local 520 employees assigned to designated Gas Field projects. (See Doc. 35 at 8-9). We resolved that the plain language of the 2012-2015 Agreement—stating that same "shall apply to and cover *all employees of an Employer*"—refuted Gas Field's proposed limitation. (Id. at 10-11). Hence, we granted the Funds' motion, denied Gas Field's motion, and deferred entry of judgment pending a determination of damages. (See Docs. 35, 36).

The Funds hired auditors to review Gas Field's payroll records and identify employees covered by the 2012-2015 Agreement as interpreted by the court. (See Doc. 50 ¶ 2). The auditors thereafter identified all employees covered by the 2012-2015 Agreement for whom no contributions were made (the "covered employees"). (See id. ¶ 3). The parties agree that, based on the court's summary judgment ruling and the auditors' findings, Gas Field's delinquencies for the covered employees are as follows:

- Pension Fund: $646,021.14 in contributions, $96,903.17 in liquidated damages, and $184,608.17 in interest;

- Annuity Fund: $248,055.66 in contributions, $37,208.35 in liquidated damages, and $70,993.25 in interest; and

- Health and Welfare Fund: $648,467.35 in contributions, $97,270.10 in liquidated damages, and $185,893.68 in interest.

(Id. ¶¶ 4-6).

For covered employees on whose behalf Gas Field did not make requisite Fund contributions, Gas Field provided certain alternative benefits. (See id. ¶¶ 8-9). Gas Field provided health insurance at a cost of $146,166.23, and contributed to a 401(k) retirement plan in the amount of $25,566.31. (Id.)

## II. Conclusions of Law

Gas Field does not dispute the accuracy of the auditors' calculations. (See id. ¶¶ 6-8). Gas Field instead asserts that its provision of alternative benefits to the covered employees either (1) immunizes it from an ERISA damages award, at least with respect to the Health and Welfare Fund, or (2) entitles it to an offset or credit for the amount of alternative benefits provided. (Id. ¶¶ 7-9; Doc. 52 at 2-4). Neither argument has merit.

Section 515 of ERISA provides that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. If a fund successfully establishes a statutory right to delinquent contributions, ERISA entitles the fund to the unpaid contributions themselves as well as interest thereon, liquidated damages, and attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2). Liquidated damages shall be the greater of the unpaid interest or any amount contemplated under the plan not more than 20 percent of the unpaid contributions. Id. § 1132(g)(2)(C).

4

By enacting Section 515, Congress intended to ratify the United States Supreme Court's holding in Lewis v. Benedict Coal Corp., 361 U.S. 459 (1960). See Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1102-03 (3d Cir. 1996) (citing Lewis, 361 U.S. at 470-71). The Court in Lewis concluded that employers cannot wield a union's breach of a collective bargaining agreement as a defense against third-party funds seeking delinquent contributions. Lewis, 361 U.S. at 470-71. Section 515 codifies this principle and grants third-party funds a statutory remedy to recover delinquencies when employers violate the terms of collective bargaining agreements. Cent. Pa. Teamsters Pension Fund, 85 F.3d at 1103 (quoting Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990)).

Funds seeking delinquent contributions under Section 515 are entitled to enforce the collective bargaining agreement "as written" and "without regard to understandings or defenses applicable to the original parties." Id. (quoting Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1149 (7th Cir. 1989) (*en banc*)). Consequently, the full range of traditional contract defenses is not available to employers sued under Section 515. Id. at 1103-04. The Third Circuit Court of Appeals recognizes only three defenses to delinquency: (1) the contributions are themselves illegal; (2) the collective bargaining agreement is void *ab initio*; or (3) the union has been decertified as the employees' bargaining representative. Agathos v. Starlite Motel, 977 F.2d 1500, 1505-06 (3d Cir. 1992) (citations omitted).

5

In our Rule 56 opinion, we concluded that Gas Field cannot avail itself of any of the three accepted defenses. (See Doc. 35 at 11-14). Gas Field now avers that the Agathos panel implicitly recognized a fourth defense: that an employer's delinquent contribution obligations are cancelled or at least mitigated when employees have no cognizable claim to a fund's benefits. (Doc. 52 at 2). Gas Field contends that its provision of health insurance benefits to covered employees is a complete defense to its delinquent contributions to the Health and Welfare Fund.[2] (Id. at 2-3).

In Agathos, union welfare and pension benefit funds sued to recover contributions on behalf of eight employees whose employment was never reported to the funds. See Agathos, 977 F.2d at 1503. The Third Circuit panel highlighted that the funds themselves were largely to blame for the deficiency: the funds had neglected their fiduciary duty to identify covered employees and inform them of their rights. Id. at 1507. As a result of this "dereliction of . . . fiduciary obligations," employees had no basis to expect coverage. Id. The court resolved that, under the unique circumstances of the case, to require "unconditional[]" contributions on behalf of all employees, even those with no arguable claim to benefits, would result in a "windfall" to the funds. See id. (citing Sheet Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co., 954 F.2d 1506, 1510 (9th Cir. 1992)). The panel thus remanded to the district court to determine which unreported employees had a "colorable claim" against the funds. See id. at 1507-08.

---

[2] Gas Field does not raise this argument with respect to the Annuity or Pension Funds. (See id. at 2-3).

Courts confronted with the "windfall" argument generally characterize Agathos as "the exception, not the rule." See D.A. Nolt, Inc. v. Local Union No. 30, 143 F. Supp. 3d 229, 239 n.6 (E.D. Pa. 2015). In other words, the atypical result in Agathos was limited to "the specific circumstances" of that case. Id. There is no evidence *sub judice* that the Funds "persistently violated" their fiduciary duties or are otherwise responsible for the deficiency. See Agathos, 977 F.2d at 1507; see also D.A. Nolt, Inc., 143 F. Supp. 3d at 239 n.6; Trs. of Int'l Bhd. of Teamsters Local 531 Sick & Welfare Fund v. Marangi Bros., Inc., 289 F. Supp. 2d 455, 463-64 (S.D.N.Y. 2003) (citations omitted). Indeed, Gas Field concedes that the near-total abdication of fiduciary obligations animating the Agathos ruling is simply "not present here." (Doc. 52 at 2). Agathos does not relieve Gas Field of its obligation to remit delinquent contributions to the Health and Welfare Fund.

Gas Field also entreats the court to adopt the position taken by dissenting judges in the Seventh Circuit's *en banc* decision in Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir. 1989) (Cudahy, J., dissenting). The dissent in Gerber Truck suggests broadly that the general rule of contributions for "all employees" must yield to "equitable exception" in cases where rigid application might otherwise work a windfall. See id. at 1158. The Third Circuit carved its limited equitable exception to Section 515 in Agathos. Absent any indication the appellate court intended us to do so, we decline to extend that narrow exception further.

Gas Field alternatively contends that the court should reduce the total damages award by the amount of health insurance benefits and 401(k) retirement

7

plan contributions it provided to covered employees. (Doc. 52 at 3-4). Gas Field identifies no decisional law supporting its proposed reduction, and the court's research reveals none. Contrary authority, however, is abundant. At least three circuit courts have flatly rejected the notion that provision of alternative benefits directly to an *employee* satisfies an employer's obligation to the *fund*. See O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 170 (2d Cir. 1984); Brogan v. Swanson Painting Co., 682 F.2d 807, 809 (9th Cir. 1982); Local 9, Int'l Union of Operating Eng'rs v. Siegrist Constr. Co., 458 F.2d 1313, 1316 (10th Cir. 1972).

We find the *ratio decidendi* of the Second, Ninth, and Tenth Circuits persuasive. Congress enacted Section 515 to ensure that multiemployer benefit funds may enforce the terms of collective bargaining agreements "as written." Cent. Pa. Teamsters Pension Fund, 85 F.3d at 1103. In accordance with the plain language of the 2012-2015 Agreement, the Funds herein reasonably anticipated contributions on behalf of *all* covered employees. Gas Field's position would allow it to evade this contractual obligation, bypass Section 515, and force third-party funds to bear the cost of its unilateral decision to offer alternative benefits in lieu of agreed contractual contributions. ERISA does not permit this result. See O'Hare, 740 F.2d at 170; Brogan, 682 F.2d at 809; Local 9, Int'l Union of Operating Eng'rs, 458 F.2d at 1316. No matter how well-intended Gas Field's decision, the provision of alternative benefits to the covered employees neither excuses nor reduces Gas Field's liability to the Funds. To comply with Section 515, Gas Field must remit the stipulated damages to the Funds in full.

## III. Conclusion

The court will enter judgment in favor of the Funds for the total amount of damages outlined in the parties' joint stipulation of facts. (Doc. 50). An appropriate order shall issue.

                                                  /S/ CHRISTOPHER C. CONNER
                                                  Christopher C. Conner, Chief Judge
                                                  United States District Court
                                                  Middle District of Pennsylvania

Dated:       July 5, 2017